IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 1:07-CR-346 |
| | ) | |
| TERRENCE WALTERS, | ) | Hon. John D. Bates |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WALTERS' SUPPLEMENTAL MOTION TO SUPPRESS TANGIBLE
EVIDENCE AND STATEMENTS**

NOW COMES Defendant Terrence Walters, by and through undersigned counsel,

pursuant to the Fourth Amendment of the United States Constitution, respectfully supplementing

his motion for  this Honorable Court to order suppression of the tangible evidence seized during

the search of Defendant's person and automobile on November 14, 2007 and during the

subsequent search of 3709B Martin Luther King Avenue, Apartment 7B on November 19, 2007.

In support of this motion, Defendant Walters states as follows:

On November 14, 2007, the United States Park Police stopped a blue Buick under the

pretext of a tinted window violation.  A permit and registration check revealed that the car

belonged to and was being driven by Terrence Walters, who resided at 5011 Plata Street, in

Clinton, Maryland.  According to Deputy Sgt. Monahan, one of the officers on the scene, he

detected "the odor of burnt marijuana emanating from the vehicle." *See* Attachment 1, Police

Incident Report.  Defendant Walters denies having smoked in the vehicle such that the odor of

burnt marijuana would be present.

The officers then report that Defendant Walters directed them to his outer right jacket

pocket which contained a section of cellophane holding a green leafy substance.  Defendant

1

Walters denies consenting to the search of his person or his vehicle. After ordering Defendant Walters to exit the vehicle, the officers conducted a further search of Defendant's person, finding $2,360 in U.S. currency. A search of the vehicle revealed a "black and blue BMW knapsack located on the right rear passenger floorboard. A search of the knapsack revealed a Taurus PT99 9 mm semi-automatic handgun [and a] zip lock bag with a white powder substance that weighed 519 grams," and personal documents. *See* Incident Report.

On November 16, 2007, United States Park Police Investigator Andrew Keness submitted an application for a search warrant for 3790B Martin Luther King Avenue, Apartment 7B.[1] In whole, the affidavit in support of the search warrant was based upon the search that revealed drugs and weapons in Defendant's car and upon Officer Keness' training and experience "that individuals that traffick [sic] in narcotics, [sic] maintain books, records, receipts, notes, ledgers, safe deposit keys along with other papers and documents relating to transportation, ordering, purchase and distribution of controlled substances as well as the nature, scope, extent and methods of operation of illegal drug-trafficking activities *in their residence*." *See* Attachment 2, Affidavit in Support of Search Warrant. The Affidavit omitted any information concerning the fact that the officers knew from the initial search and arrest that Defendant Walters's home was at 5011 Plata Street in Clinton, Maryland.

On November 19, 2007, pursuant to a search warrant, the United States Park Police searched 3790B Martin Luther King Avenue, Apartment 7B and seized two handguns, a quantity of drugs, drug paraphernalia, and other items.

---

[1] An envelope found pursuant to the search of Defendant Walters' vehicle and knapsack revealed one envelope addressed to Terrence Walters at 3790 MLK Ave SE Apt. #7B. *See* Attachment 3, Property Control Receipt.

On December 13, 2007, a federal grand jury indicted Terrence Walters on Seven Counts stemming from the November 14th and 19th searches.

On January 31, 2008, Defendant filed his initial motion to suppress, which he incorporates and supplements herein.

## I.    THE SEIZED EVIDENCE FROM THE NOVEMBER 14, 2007 SEARCH SHOULD BE SUPPRESSED

### A.    The Traffic Stop for a Tinted Window Violation Was Objectively Unreasonable When Measured By the Totality of the Circumstances

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). However, "when an arrest on a traffic charge is used as a pretext to justify a search for evidence of other crimes the search is invalid." *United States v. Green*, 465 F.2d 620, 623 n.5 (D.C. Cir. 1972). *See also United States v. Bullock*, 215 F.Supp.2d 174, (D.D.C. 2002).

The District Court for the District of Columbia has stated that "[p]olicemen looking for excuses to stop vehicles they consider suspicious have found the District of Columbia's tinted windshield law to be a useful device."[2] *United States v. Green*, 437 F.Supp.2d 38, 40 (D.D.C.

---

[2]    The Motor Vehicle Tinted Window Amendment Act of 1994 was adopted by the D.C. Council and became effective in 1994, D.C. Code § 50-2207.02 (2001). It prohibits operating or parking a motor vehicle on the public streets or spaces of the District of Columbia if the vehicle has a front windshield or front side windows that allow less than 70 percent light transmittance or a rear windshield or rear windows that allow less than 50 percent light transmittance. It provides for a $50 citation for violation of the provision. A special order of the Metropolitan Police Department issued on September 27, 1995, establishes enforcement procedures for the law and provides a detailed enforcement policy, requiring officers to conduct a window illumination check with a tint meter before citing a driver for violating the tint law. A police officer not certified in the use of a tint meter must request the assistance of a certified officer to conduct a window illumination check. If tint measurements indicate a violation, the officer conducting the window illumination check is to prepare a PD Form 61-C, which is an order requiring that the car be inspected. Any vehicle with less than 25 percent light transmittance in either the front windshield or front window is to be

2006).  The district court further found that:

> It was disturbing to learn, in the course of this suppression hearing, that there is a clear
> geographic pattern to MPD's enforcement of the tinted window regulations: Over a
> thirteen month period, from April 2005 through April 2006, 820 window tint infractions
> were issued in the First District- that is, south and east of New York and Florida Avenues
> and Benning Road to the Anacostia River.  That is more than four times as many as were
> issued during the same period for any other district.  Also, it seems that certain police
> officers have become specialists in the issuance of tinted window citations.  In this same
> thirteen month period, the officer wearing badge number 3771 issued 276 tinted window
> citations in the First District alone.

*Id*. at 41.

The District Court continued: "The tint window law is as close to a purely pretextual

reason for stopping vehicles as can be found in the real world of everyday police work."[3]  *Id*.

The pretext of the stop was further supported by the fact that "[t]he officer who made the stop in

this case... had no training in the window tint regulations, was not certified to use a window tint

meter, did not have a window tint meter or an officer certified to use it in his cruiser, and did not

consult with his partners about his observation that the Expedition's windows were 'real dark.'"

*Id*.  Further, the court found that the officer "failed to follow the prescribed enforcement

---

deemed a 'health and safety risk' and immediately towed for inspection.

*Green*, 437 F.Supp.2d at 40-41.  The court found that "[t]he record of this case reveals a number of deviations
between MPD's tint window policy and its actual practice.  Nobody appears to know who has the 100 window tint
meters that were purchased to enforce the law.  Officer Raynor's testimony was that the measured tint of the
Expedition was only 10 percent light transmittance, but the car was not immediately towed to an inspection station.
No citation was issued."  *Id*. at 41.

[3] While police officers would seldom admit that tint laws allow pretext stops for further investigations, the
anonymity of the internet allows tint laws to be viewed as what they really are.  On a forum reserved for law
enforcement officers, a question was asked concerning fellow officers' views of Florida's tint laws.  *See*
http://forums.officer.com/showthread.php?t=83604.  Some officers responded that "Its [sic] an excellent tool for
further 10-17 [investigation]," "Love it, Love it, Love it.  It's instant PC [probable cause] for a stop and attitude
adjustment if needed," and "I use window tint as PC for stops all the time... I love it..."  *See*
http://forums.officer.com/showthread.php?t=83604.

procedure of advising the operator 'that there is reasonable cause to believe the window tint may exceed the maximum allowance and that the light transmittance of the vehicle's glass will be measured.'" *Id.*

Defendant states that his initial stop by the United States Park Police was a pretextual stop made in order to allow further investigation and intrusion, beyond the scope of a mere traffic stop for tinted windows. Defendant suggests that there has been no showing that Deputy Sgt. Monahan, the officer making the stop, had knowledge of how to judge the tint on a car's window at night. Further, there has been no showing that Deputy Sgt. Monahan was aware of the District of Columbia law concerning window tint or that he followed D.C. procedures concerning a tinted window traffic stop. *See State v. Coursey*, 906 A.2d 845 (Del. Super. 2006) (holding that suppression was proper where officer failed to understand proper standard underlying window tint law). Therefore, Defendant suggests that the initial traffic stop was a mere pretext for further investigation unrelated to the tinted windows and was unreasonable considering the totality of the circumstances.

**B.    The Officers Did Not Have Probable Cause or a Reasonable Suspicion to Justify the Initial Seizure of Defendant Walters and the Subsequent Search of His Person and Vehicle**

"It is undisputed that a tinted window violation is not an arrestable offense and does not justify the search of a person or his or her vehicle without more." *Green,* 437 F.Supp.2d at 42 (citing *United States v. Price*, 409 F.3d 436, 441 (D.C. Cir. 2005)). "To establish probable cause, the facts and circumstances must be 'sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." *Green*, 437 F.Supp.2d at 42 (citing *John Doe v. Metro. Police Dept. of D.C.*, 445 F.3d 460, 469 (D.C. Cir. 2006)). Moreover,

to justify a *Terry* stop and search, an officer must demonstrate a reasonable and articulable

suspicion. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Defendant suggests that neither probable cause

or a reasonable and articulable suspicion can be demonstrated by the officers in this case.

In the police report, the officers allege that they "detected the odor of burnt marijuana

emanating from the vehicle," which justified their seizure and subsequent search of Mr. Walters

and the vehicle. However, Defendant Walters vehemently denies having smoked marijuana in

the vehicle such that the odor of "burnt marijuana" would be present. The subsequent search of

Mr. Walters' person and the car reveals the officers' odor detection to be a mere pretext to justify

a further search and seizure.[4] The seized property list indicates no evidence which would support

the finding that marijuana had recently been smoked in the car. While the officers found 3 grams

of marijuana on Mr. Walters' person, there was no evidence of any smoked marijuana, such as a

smoked joint, blunt, or ashes therefrom. There was no evidence of any bowl, bong, or other drug

paraphernalia used to smoke marijuana. While the vehicle search revealed two Phillies Blunt

Strawberry cigars, these cigars were wrapped, and there is no indication that they were used to

smoke marijuana. Moreover, the search failed to reveal any type of lighting implement, such as a

lighter or matches that would need to be used in order to smoke marijuana.

In other cases where a court upheld the odor of burnt marijuana as justifying probable

cause for a warrantless automobile search, the burnt marijuana odor was accompanied by other

objective evidence of drug use. *See, e.g.*, *United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir.

1997) (stating that government relied on "smell of burnt marijuana emanating from the car, the

---

[4] Furthermore, Defendant Walters vehemently denies consenting to a search of his person as alleged in the police report.

pieces of torn cigar paper arrayed around [Defendant], and the ziplock bag of green weed material" seen on the floor behind [Defendant's] seat."); *United States v. McElveen*, 129 Fed.Appx. 42 at *1 (4th Cir. 2005) (finding probable cause where there was a "strong odor of marijuana, cigar rolling papers, and... numerous air fresheners."). Here, beyond the testimony of the officer, there is no evidence that marijuana had recently been smoked in the vehicle. Therefore, Defendant states that the officers' testimony should be discounted as unreliable.

Thus, Defendant Walters suggests that the detection of an odor of burnt marijuana was a mere pretext to justify further intrusion of Defendant Walters' privacy following the pretextual traffic stop for a tinted window violation. The traffic stop alone could not justify further search and seizure and the officers had to manufacture further probable cause in order to justify their further intrusions. Therefore, any searches and seizures subsequent to the traffic stop were unreasonable and not based upon probable cause or a reasonable and articulable suspicion.

**C.    The Seizures Resulting from the Search of Defendant's Automobile and Knapsack As Well as Defendant's Statements Should Be Suppressed As Fruits of the Poisonous Tree**

"[E]vidence seized during an unlawful search [cannot] constitute proof against the victim of the search." *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). "The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." *United States v. Dawkins*, 17 F.3d 399, 408 (D.C. Cir. 1994) (quoting *Wong Sun*, 371 U.S. at 484). Furthermore, "the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.'" *Wong Sun*, 371 U.S. at 485. "[V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action... is no less the 'fruit' of the official illegality than the

more common tangible fruits of the unwarranted intrusion." *Id*.

Therefore, Defendant states that inasmuch as the initial November 14, 2007 stop was illegal, all evidence subsequently derived from that initial illegal intrusion, including evidence from the automobile, statements made by the Defendant, and evidence seized from 3709B Martin Luther King Avenue should be held to be inadmissible as fruit of the poisonous tree. Furthermore, Defendant states that inasmuch as the search of his person and automobile was illegal, all evidence derived from such a search, all statements made by Defendant subsequent to the search, and all evidence derived from the apartment search, which was based on probable cause supplied by the illegally obtained evidence from the vehicle, should be suppressed.

## II.    THE SEIZED EVIDENCE FROM THE NOVEMBER 19, 2007 SEARCH SHOULD BE SUPPRESSED

Assuming *arguendo* that the November 14, 2007 warrantless search was not unconstitutional and that the contents of the November 19, 2007 search should not be suppressed as fruit of the poisonous tree, Defendant states that the evidence derived from the November 19, 2007 search should be suppressed independently due to knowingly false and materially misleading statements made in the affidavit supporting the search warrant, which negate the existence of probable cause.

"The test for reviewing an allegation that a warrant was based on a false affidavit derives from the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978)." *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988). "Under the *Franks* test, in order to challenge the affidavit successfully, the defendant must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false

statements were made knowingly and intentionally or with reckless disregard for the truth."  *Id*. (citing *Franks*, 438 U.S. at 155-56).

**A.     The Affidavit Contained False Statements Indicating that 3709B Martin Luther King Avenue, Apartment 7B Was Defendant Walters' Residence and Omitted Material Statements Regarding Defendant's Actual Residence**

The Affidavit clearly contained false statements and omitted material statements.  The logical chain of inferences in the Affidavit was as follows.  The Defendant's vehicle was stopped and searched, at which time the United States Park Police discovered a quantity of drugs and a hand gun as well as a document with the 3709B Martin Luther King Avenue address.  *See* Affidavit at 3.  Based on his training and experience, Affiant Keness inferred that, stereotypically, other evidence of drug trafficking would be found at a drug traffickers' residence. *See* Affidavit at 2.  Therefore, according to Affiant Keness, because Defendant was a suspected drug trafficker based upon the seizure of the quantity of drugs and the hand gun from his vehicle, evidence of drug trafficking would be found at the Defendant's residence, justifying probable cause to issue a warrant.

However, the Affidavit failed to indicate that 3709B Martin Luther King Avenue, Apartment 7B was not Defendant's residence, but instead Defendant resided at 5011 Plata Street, in Clinton, Maryland.  This was the address which was indicated on Defendant's license, on the registration of his car, and on all of the official police documentation concerning the search and arrest of Defendant.

**B.     The False Statements Were Made and Other Materially Statements Omitted Knowingly and Intentionally or With Reckless Disregard for the Truth**

Furthermore, it is beyond peradventure that the false statements were made knowingly

and intentionally and with reckless disregard for the truth and that the other material statements were omitted knowingly and intentionally and with reckless disregard for the truth. Defendant's residence in Clinton, Maryland was obtained by the officers during his initial traffic stop and arrest. Furthermore, Defendant's Clinton, Maryland address was contained on the Criminal Incident Report. *See* Police Incident Report. The fact that Defendant's vehicle had Maryland tags was also referenced in the narrative write-up of the incident. *See* Police Incident Report. The Defendant's Clinton, Maryland address was also referenced on the Property Control Receipt. *See* Property Receipt. Defendant's Clinton, Maryland residence was again stated on the Metropolitan Police Department's Certificates regarding firearm registration and license. *See* Attachment 4, Certificate of Firearms Registration Certificate and Certificate of No Record of License to Carry a Pistol. Further, Defendant's Clinton, Maryland address was written on his citation for window tint. *See* Attachment 5, Window Tint Citation.

Therefore, based on the conspicuous inclusion of the Defendant's Clinton, Maryland home address on all of the official police documentation, it would be unreasonable for Officer Keness to suggest that he was unaware of Defendant's residence. The omission of Defendant's Clinton, Maryland address in the Affidavit was thus made with reckless disregard for the truth. Further, Officer Keness' inference that Defendant resided at 3709B Martin Luther King Avenue was false and made knowingly and intentionally, as Officer Keness was aware that Defendant's actual home residence was in Clinton, Maryland.

## C.    The False and Omitted Statements Were Material to the Issue of Probable Cause

The lynchpin question then becomes whether absent the material misrepresentation, probable cause would have still existed to search 3709B Martin Luther King Avenue, Apartment

7B.  *See United States v. Vanness*, 85 F.3d 661 (D.C. Cir. 1996).

"In determining whether probable cause to search exists, a court must view the 'totality of circumstances' set forth in the affidavit."  *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992)  (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).  "The relevant inquiry under *Gates* is whether in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *DeLeon*, 979 F.2d at 764 (citing *Gates*, 462 U.S. 213).  "In general, a court reviewing the validity of a search warrant is limited to the information contained on the face of the underlying affidavit.  Where, as here, a warrant's validity is challenged for deliberate or reckless omissions of facts that tend to mislead, the affidavit must be considered with the omitted information included." *DeLeon*, 979 F.2d at 764 (citations omitted).

    **1.**      **With the False Information Excluded and the Omitted Information Included, the Affidavit Does Not Support a Finding of Probable Cause Because the Affiant Cannot Demonstrate a Nexus Between the Evidence Sought and the Place to Be Searched**

"[T]he issue in warrant proceedings is... probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises."  *United States v. Harris*, 403 U.S. 573, 584 (1971) (citation omitted).  "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Thus, courts have held that "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed- the 'commission' element, and (2) enumerated

evidence of the offense will be found at the place to be searched- the so-called 'nexus' element." *United States v. Felix*, 182 F.3d 82, 86 (1st Cir. 1999). *See also United States v. Crews*, 502 F.3d 1130, 1136-37 (9th Cir. 2007) ("For probable cause, an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched. It need only be reasonable to seek the evidence at the location indicated in the affidavit."); *United States v. Carpenter*, 360 F.3d 591,594 (6th Cir. 2004) ("To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought."); *United States v. Rios*, 881 F. Supp. 772, 774 (D. Conn. 1995) ("To establish probable cause to search a residence, two factual showings are necessary- first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence."); *State v. Thein*, 977 P.2d 582, 585 (Wash. 1999) ("[P]robable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched."); Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 3.7 (4th ed. 2007) ("Assuming no problems exist with respect to time, it is still necessary that there be established a sufficient nexus between (1) criminal activity, and (2) the things to be seized, and (3) the place to be searched.").

In *Carpenter*, the Sixth Circuit found that a police officer's "affidavit did not provide a substantial basis for the issuing judge's conclusion that probable cause existed to search the Carpenters' residence, because it failed to set forth sufficient facts that incriminating evidence would be found *there*, rather than in some other place." *Carpenter*, 360 F.3d at 594 (emphasis in original).

In *Rios*, the District Court for the District of Connecticut found that "[a] close review of Agent Lyon's sixty-nine page affidavit reveals that the only allegations to suggest that evidence of Rios's alleged criminal activity would be located in his home are Lyon's general averments based on her training and experience...." *Rios*, 881 F. Supp. at 775. The court stated that:

> [a]n agent's expert opinion on the location of evidence is certainly an important factor to be considered in a warrant application. The question here, however, is whether the expert opinion of a government agent based on her knowledge of the practices of large-scale drug traffickers can, by itself, provide an adequate basis for a determination that probable cause exists to search the residence of an individual suspected to be involved in drug trafficking.

> [W]here... there is nothing to connect the illegal activity with the arrested person's apartment, to issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses."

*Id*. at 775 (quoting *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987)).

In *United States v. Pope*, 330 F.Supp.2d 948 (M.D. Tenn. 2004), a district court found that "an officer's training and experience alone are no substitute for the required evidentiary nexus between criminal activity and the place to be searched." *Id*. at 956 (citing *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994)). The court stated that:

> [a]lthough the court has no difficulty accepting that gun owners typically keep guns in their home, *that truism is of little benefit when faced with multiple addresses*. In fact, where all evidence points to the conclusion that the defendant was operating a criminal enterprise involving a firearm at a single residence, it would be unreasonable to presume that evidence would also be found at any or all other locations connected to or even owned by the defendant. The only connection between Mr. Pope's criminal activity at Moccasin Creek and his Pope Circle property is the natural suspicion that criminal may maintain evidence of their crimes anywhere they spend time, a suspicion that has been held insufficient by the Sixth Circuit.

*Id*. at 956-57.

Some courts have upheld the probable cause nexus requirement upon expert testimony

13

that drug dealers typically keep business records, narcotics, and weapons in their homes, without requiring any other evidence. *See*, *e.g.*, *United States v. Lamon*, 930 F.2d 1183, 1888 (7th Cir. 1991) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); *United States v. Henson*, 123 F.3d 1226 (9th Cir. 1997) ("Supporting affidavit stating that, in officer's experience, drug dealers normally hid drugs in their place of residence, and that defendant resided at address, provided probable cause justifying issuance of search warrant for address."); *United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986); *United States v. Fannin*, 817 F.2d 1379 (9th Cir. 1987); *United States v. Pitts*, 6 F.3d 1366 (9th Cir. 1993). *See also United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993) ("[O]bservations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence."). But it is clear that in such situations a sufficient probable cause nexus is at its nadir.

In the case *sub judice*, after removing the false information and supplying the omitted information, the Affidavit cannot support a finding of probable cause to search 3709B Martin Luther King Avenue. In the Affidavit, Officer Keness swore that a drug trafficker typically keeps records of his transactions, other narcotics and weapons at his residence. However, as known to Officer Keness, 3709B Martin Luther King Avenue is not Defendant Walters' residence, but rather Defendant Walter resides at a home in Clinton, Maryland. Thus, while the Affidavit might support probable cause to search Defendant's Maryland residence, it certainly does not support probable cause to search the Washington, D.C. address. As in *Pope*, *Rios*, and *Carpenter*, the police were faced with multiple addresses, and the Affidavit failed to specify that evidence would

14

be more likely found at the Washington, D.C. address rather than the Clinton, Maryland address. In fact, based on the Affidavit, in which the Affiant claims that drug dealers typically hide records, drugs, and guns at their residences, probable cause is specified for the Clinton, Maryland address, the Defendant's home residence, rather than the Washington, D.C. address.  However, the Affidavit knowingly omits mention of the Clinton, Maryland residence of the Defendant, allowing the Court to falsely infer that the Washington, D.C. address is the Defendant's residence.

Therefore, where the false information is excluded and the omitted information is included, the Affidavit, on its face, fails to demonstrate the nexus requirement for the place being searched and the evidence sought to establish probable cause.  Thus, Defendant states that the fruits of the November 19, 2007 search, which was based on a materially false affidavit, must be suppressed pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Further, Defendant suggests that he is entitled to a hearing pursuant to *Franks*.

## 2.    Boilerplate Language in an Affidavit Cannot Support a Finding of Probable Cause

The false statement in this case undergirds the point that affidavits must contain specific facts as they relate to the particular case and not mere generic or boilerplate language.  Without the particular facts, many search warrant affidavits reinforce an improper standard- that it is *per se* valid to search the homes of persons found outside of their residences with narcotics, without anymore of a showing besides prefabricated language.  Such a standard is in four square opposition to the Fourth Amendment.

"Affidavits supporting a search warrant must provide 'adequate supporting facts,' not

15

mere conclusions or boilerplate language." *United States v. Larkin*, 173 F.3d 857 (6th Cir. 1999)

(citing *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996)).  The D.C. Circuit has held

that it does not "sanction the use of boilerplate or inaccurate affidavits.  Police officers must take

care to include all evidence of probable cause available to them in their affidavits, and the

affidavits must accurately reflect the facts of the particular case."  *Richardson*, 861 F.2d at 294-

95.

The officer in this case included mere boilerplate language in the search warrant affidavit,

without particularizing the affidavit to the facts of this case.  This boilerplate language, however,

did not fit the facts of the case, which the officer would have recognized had he not acted with

reckless disregard for the truth- namely that the Defendant was residing at his home in Clinton,

Maryland.  But for the incongruity of the boilerplate language with the particular facts of the

case, the Court would not likely have had such generic language brought to its attention.

Defendant suggests that with or without the falsity of the boilerplate language, the use of such

generic language to support a search warrant affidavit, where the only evidence supporting the

finding of probable cause is the generic language- namely that drug dealers typically keep

contraband at their homes, such an affidavit fails to establish the nexus requirement of probable

cause.

**D.     The Good-Faith Exception Is Not Applicable to the Facts of This Case Were the
        Search Warrant Was Based Upon an Affidavit Containing False Statements and
        Materially Misleading Omissions**

The Supreme Court has held, that despite a good-faith exception, "[s]upression... remains

an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information

in an affidavit that the affiant knew was false or would have known was false except for his

16

reckless disregard for the truth." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citing *Franks*, 438 U.S. 154). Thus, the D.C. Circuit has held that "[t]he *Leon* 'good faith' exception would not apply if [Affiant] had made a false, material statement knowingly and intentionally or with reckless disregard for the truth, even if a second officer had executed the search in reasonable, good faith reliance on the warrant. It would eviscerate the Fourth Amendment and encourage subterfuge to allow an officer to rely in 'good faith' on a warrant obtained in bad faith with a false affidavit." *United States v. Richardson*, 861 F.2d 291, 295 n.5 (D.C. Cir. 1988).

Therefore, because Officer Keness misled the Court to issue a warrant based on the material omission of Defendant's actual residence and based on the false statement that Defendant was residing at 3709B Martin Luther King Avenue, the good-faith exception does not apply in this case.

WHEREFORE Defendant Walters respectfully requests that this Court issue an order suppressing the evidence seized during the November 14th search of his automobile and during the November 19th search of 3709B Martin Luther King Avenue. Further, Defendant requests that this Court suppress any statements made pursuant to the illegal searches as fruits of the poisonous tree. Finally, Defendant requests that this Court grant a *Franks* hearing to determine any disputed issues of fact.

Respectfully Submitted,

TERRENCE WALTERS
By Counsel

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.

17

108 North Alfred Street
Suite 100 - Lower Level
Alexandria, Virginia, 22314
Phone: (703) 684-9400
Fax: (703) 684-9401
Email: wbmoffitt_esq@yahoo.com

### CERTIFICATE OF SERVICE

I, William B. Moffitt, hereby certify that I filed this Supplemental Motion to Suppress on

the 17th day of March, 2008, with the Clerk for the District Court of the District of Columbia

using the ECF filing system, which will electronically serve the following individual:

David P. Saybolt
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
108 North Alfred Street
Suite 100 - Lower Level
Alexandria, Virginia, 22314
Phone: (703) 684-9400
Fax: (703) 684-9401
Email: wbmoffitt_esq@yahoo.com

**U.S. PARK POLICE DEPARTMENT**
Washington, D.C.

ARREST/PROSECUTION REPORT

P.D. 163 Rev 6/94                    G.O. 401.5

| 1. PERSON NOTIFIED OF NAME CHANGE -UNIT -DATE/ TIME - NCIC NO. (ID Only) | 2. ID NUMBER (ID Only) |
|---|---|
| | 448269 |

| 3. DEFENDANT'S TRUE NAME - LAST, FIRST, MIDDLE (ID Only) | 4. CID NUMBER |
|---|---|
| Walters Terrance Tee | |

| 5. UNIT-ARREST NO. | 6. DEFENDANT'S NAME - LAST, FIRST, MIDDLE (At time of arrest) | 7. DEA LAB NUMBER |
|---|---|---|
| 500700729 | Walters, Terrence Stevan | |

| 8. Arresting Officer's Name | 10. NICKNAME, ALIAS | 11. PHONE NUMBER |
|---|---|---|
| Luppino | | 301-256-5808 |

| Rank | Badge # | Agency | 12. COURT DATE | 13. ADDRESS (Include Room / Apt No. City & State if Outside D.C.) | | 14. TIME IN D.C. |
|---|---|---|---|---|---|---|
| Det | 687 | USPP | 11/15/07 | 5011 Plata Street | Clinton, MD  20735 | Life |

| 9. TYPE OF RELEASE: ☐ CITATION ☐ BOND ☐ COLLATERAL |
|---|

| 15. ☐ CHILD ABUSE | ☐ GANG SPECIAL INTELLIGENCE | ☐ HATE | ☐ SENIOR CITIZEN | ☐ DOMESTIC VIOLENCE | 16. SEX ▶ M | 17. RACE ▶ B | 18. BIRTHDATE 8/27/1971 | 19. SOCIAL SECURITY NUMBER 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 |
|---|---|---|---|---|---|---|---|---|

| 20. NEED INTERPRETER Yes ☐ No ☐ | 21. HEIGHT 5'10" | 22. WEIGHT 206 | 23. HAIR Blk | 24. EYES Brown | 25. COMPLEX Medium | 26. PERMIT NO/ST | 27. BIRTHPLACE (City& State) Jamaica, NY |
|---|---|---|---|---|---|---|---|

| 28. ▶ CO-DEFENDANTS: Number ___ (If more than 3, list on back) | 29. IMPERSONATOR? M ☐ F ☐ | 30. ETHNICITY | 31. CAUTION |
|---|---|---|---|

NAME, ADDRESS, ZIP CODE AND PHONE NUMBER

| | 32. SCARS/MARKS/TATTOOS none | | |
|---|---|---|---|
| 1. | | | |
| 2. | 31 HAT | 34. JACKET Green | 35. PANTS Blue |
| 3. | 36. COAT | 37. SHIRT White | 38. SKIRT/DRESS |

| 39. WALES/NCIC CHECK | | | |
|---|---|---|---|
| CHECK MADE BY (Name) Brown, S | NCIC NUMBER 42471 | WARRANT ON FILE (If Yes, enter Warrant Number(s)) Yes ☐ No ☒ | |

| 40. LOCATION OF OFFENSE (Exact Address, Include Room /Apt No.) ▶ Galveston St. W/O S/ Capitol Street SE WDC | DATE OF OFFENSE ▶ 11/14/07 | TIME OF OFFENSE ▶ 1953 hrs. |
|---|---|---|
| 41. LOCATION-OF ARREST (Exact Address, Include Room /Apt No) ▶ same as above | DATE OF ARREST ▶ | TIME OF ARREST ▶ |

| 42. ASSISTING OFFICERS NAME, BADGE NO. & UNIT OR AGENCY ▶ Det. R. Scherr USPP, CIB, MCU | ASSISTING OFFICERS NAME, RANK, BADGE NO. & UNIT OR AGENCY ▶ Inv. T. Hodge  USPP, CIB, MCU |
|---|---|

| 43. DEFENDANT ADVISED OF RIGHTS | | | | | |
|---|---|---|---|---|---|
| DATE | TIME | LOCATION | OFFICER'S NAME - ADVISING, COMPLETING PD FORM 47/47A | BADGE NO. | UNIT |

| 44. COMPLAINANTS / WITNESSES (If sworn member - Name, Rank, Badge No and Unit)    MORE ☐    See Back | | | | |
|---|---|---|---|---|
| NAME - LAST, FIRST, M.I. | ADDRESS - STREET, CITY, STATE, ZIP CODE | BIRTHDATE | HOME PHONE NO | WORK PHONE NO. |
| W-1 ▶ | | | | |
| W-2 ▶ | | | | |

| 45. SPEC. OPS. | 46. TACTICS 04 | 47. PREMISES 01 | 48. SCHOOL ZONE ☐  PUBLIC HOUSING ☐ |
|---|---|---|---|

| 49. ENTER THE LEAD CHARGE FIRST | CHARGES | NOI OR WARRANT NUMBER | CCN | MPD DISPOS. | COLLA/BOND RECEIPT NO. |
|---|---|---|---|---|---|
| | CSA PWID Cocaine While Armed | | 07-50060 | L | |
| | | | | | |
| | | | | | |

| 50. PROPERTY RECOVERED / ITEMS OF EVIDENCE | 51. INITIALS - DATE - UNIT OF PERSON TAKING PRINT S.B. 9/14/07 USPP D5 | 53. RIGHT THUMB PRINT |
|---|---|---|
| PROPERTY BOOK/ PAGE NO. | CSES NO. | 52. M.O. WEAPONS, HANGOUTS, HABITS, INSTRUMENTS conceals narcotics and handgun in vehicle | |

| 54. CCB USE ONLY | HEIGHT | WEIGHT | HAIR | EYES | COMPLEX | SCARS/MARKS/TATTOOS |
|---|---|---|---|---|---|---|

DISTRIBUTION: Page 1. to ID & RD; Page 2. & 3. to Prosecutor, Page 4. (yellow), Unit Copy, Page 5. Officer's Copy.

PAGE _____        REVERSE CARBON AND FILL IN REVERSE SIDE OF THIS FORM

**55. EMPLOYMENT HISTORY** (List present employment if any, on Line 1)

| FROM - DATE - TO | EMPLOYER | ADDRESS | BUS PHONE | OCCUPATION |
|---|---|---|---|---|
| 1. 3 years | DC Metro | SW WDC | unknown | mechanic |
| 2. | | | | |

**56. NAMES OF LIVING FAMILY, RELATIVES, FRIENDS AND ASSOCIATES** (Begin with immediate family)

| RELATIONSHIP | DOB/AGE | NAME - LAST, FIRST, M.I. | ADDRESS - STREET, CITY, STATE, ZIP CODE | PHONE NUMBER |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| 57. MILITARY SERVICE: BRANCH/DATE FROM - TO | 58. TELEPHONE CALL MADE | 59. PHONE NUMBER |
|---|---|---|
| N/A | ☐ Yes  ☐ No  ☐ Refused | |

**60. STATEMENT OF FACTS:** (Give a brief statement in your own words, of the facts surrounding the offense and the arrest. Use Continuation Form PD 202A for additional space. Note present condition of any injured person(s). Do not give Witnesses' Names or Addresses. REFER to them as W1 or W2, etc as indicated in Item 31.)

On 11/14/2007 at approximately 1953 hours, members of the United States Park Police Criminal Investigations Branch conducted a traffic stop on a blue Buick bearing Maryland tags 7DN A03 at Galveston St. W/O S. Capitol Street SE WDC for a tinted window violation. D/Sgt. Monahan approached the driver side of the vehicle and advised the operator, verbally identified as Walters, of the violation. While conversing with Walters, D/Sgt. Monahan detected the odor of burnt marijuana emanating from the vehicle. In response to questions Walters directed Officers to his outer right jacket pocket which contained a clear section of cellophane with green leafy substance consistent with marijuana. A subsequent field test yielded a positive color reaction for marijuana and weighed approximately 3.0 grams. Walters exited the vehicle and a further search of his person revealed $2360 in U.S. Currency and a cellular phone. A search of the vehicle revealed a black and blue BMW knapsack located on the right rear passenger floorboard. A search of the knapsack revealed a Taurus PT99 9mm semi-automatic handgun (serial #TKE93773AFD) that was loaded with fifteen (15) 9mm rounds in the magazine. Also in the knapsack was a clear ziplock bag containing another clear zip lock bag with a white powder substance that weighed approximately 519 grams. A subsequent field test yielded a positive color reaction for cocaine. Additionally, there were numerous items of documentation located in the knapsack that were addressed to Walters. While on scene, a check of the driver's side window with a tint meter indicated a total light transmittance of 10%. Walters was later issued a citation for the aforementioned traffic infraction. Walters was transported to and processed at USPP District 5. Walters was later remanded to MPC CCB to await presentment on 11/15/2007.

**61. DEFENDANT'S VERSION / REMARKS** [What did defendant say about the offense or his/her whereabouts at the time of offense? (Use PD 118 for defendant's written statement.) ]

| 62. RECORD CLERK'S NAME | | 3. | 5. | 64. PROPERTY BOOK/PAGE NO. PRISONER'S PROPERTY ONLY |
|---|---|---|---|---|
| 63. ARREST RECORD SUMMARY | | | | |
| 1. | 2. | 4. | 6. | |

**65. BAIL REFORM ACT CASES:** Was a statement made by defendant in reference to his/her failure to appear? ☐ Yes  ☐ No
(If yes, include in Defendants Version/Remarks Section above.)

| 56. PRINTED NAME OFFICER MAKING STATEMENT | BADGE NUMBER | RANK | SIGNATURE OF REVIEWING OFFICIAL |
|---|---|---|---|
| Luppino | 687 | Det | D/Sgt. G.T. Monahan #822 |

| 67. SIGNATURE OF OFFICER MAKING STATEMENT | UNIT | DATE | UNIT | DATE |
|---|---|---|---|---|
| | USPP | 11/14/2007 | USPP CIB MCU | 11/14/2007 |

CHECK LAST COPY FOR LEGIBILITY BEFORE TURNING IN REPORT

FORM 10-343B (3/83)

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE

**CRIMINAL INCIDENT RECORD**

U.S. PARK POLICE ☒
PARK RANGER/TECH ☐
1 JUVENILE CASE ☐

| 2 ORGANIZATION CODE | 3 SYSTEM AREA | | 4 LOCATION CODE | 5 YEAR | | CASE/INCIDENT NUMBER |
|---|---|---|---|---|---|---|
| 3 9 6 0 | United States Park Police | | 0 7 • 0 | 5 0 0 6 0 |

| 6 LOCATION OF INCIDENT | 7 BEAT | 8 WHEN DID IT OCCUR? | MO. | DAY | YR. | 9 24 HOUR TIME | 10 DAY OF WEEK |
|---|---|---|---|---|---|---|---|
| Galveston St. w/o S. Capitol St. SW | 619 | | 1 1 | 1 4 | 0 7 | HRS. 1 9 MIN. 5 3 | 4 |

| 11 OFFENSE/INCIDENT CODE | 12 NATURE OF INCIDENT | 13 WHEN RECEIVED: |
|---|---|---|
| | Weapons Offense- Gun    (one arrest) | DATE 11/14/07   TIME 1953 |

**COMPLAINANT / WITNESS / VICTIM**

| 14 LAST | FIRST | MI | C/V/W | 15 DATE OF BIRTH | 16 PHONE BUSINESS |
|---|---|---|---|---|---|
| Luppino | G. | | XX | | (202) 610-8730 |

| 17 ADDRESS NUMBER | STREET | CITY | STATE | ZIP | 18 PHONE RESIDENCE |
|---|---|---|---|---|---|
| USPP/CIB/MCU | | | | | |

| 19 LAST | FIRST | MI | C/V/W | 20 DATE OF BIRTH | 21 PHONE BUSINESS |
|---|---|---|---|---|---|
| | | | | | |

| 22 ADDRESS NUMBER | STREET | CITY | STATE | ZIP | 23 PHONE RESIDENCE |
|---|---|---|---|---|---|
| | | | | | |

**ARRESTED SUSPECT / OTHER**

| 24 LAST | FIRST | MIDDLE | A/S/O | 25 DATE OF BIRTH | 26 PHONE BUSINESS |
|---|---|---|---|---|---|
| Walters | Terrence | Stevan | XX | 03/27/71 | |

| 27 ADDRESS NUMBER | STREET | CITY | STATE | ZIP | 28 PHONE RESIDENCE |
|---|---|---|---|---|---|
| 5011 Plata | Plata Street | Clinton | Maryland | 20735 | (301) 256-5808 |

| 29 RACE | 30 SEX | 31 AGE | 32 HGT | 33 WGT | 34 EYES | 35 HAIR | 36 HAIR LENGTH | 37 HAIR STYLE | 38 FACIAL HAIR | 39 MARKS/SCARS | 40 ARMED WITH |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | M | 36 | 5 10 | 206 | bro | blk | short | none | must/brd | | 9mm Semi-Auto Handgun |

| 41 HAT | 42 COAT/JACKET | 43 SHIRT | 44 TROUSERS/SKIRT | 45 SHOES | 46 SOCIAL SECURITY NUMBER | 47 PDID |
|---|---|---|---|---|---|---|
| | Gray | White | Blue | White | 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 | |

| 48 LAST | FIRST | MIDDLE | A/S/O | 49 DATE OF BIRTH | 50 PHONE BUSINESS |
|---|---|---|---|---|---|
| | | | | | |

| 51 ADDRESS NUMBER | STREET | CITY | STATE | ZIP | 52 PHONE RESIDENCE |
|---|---|---|---|---|---|
| | | | | | |

| 53 RACE | 54 SEX | 55 AGE | 56 HGT | 57 WGT | 58 EYES | 59 HAIR | 60 HAIR LENGTH | 61 HAIR STYLE | 62 FACIAL HAIR | 63 MARKS/SCARS | 64 ARMED WITH |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

| 65 HAT | 66 COAT/JACKET | 67 SHIRT | 68 TROUSERS/SKIRT | 69 SHOES | 70 SOCIAL SECURITY NUMBER | 71 PDID |
|---|---|---|---|---|---|---|
| | | | | | | |

| 72 VEHICLE ☒INVOLVED IN CRIME ☒KNOWN TO OPERATE | 73 YEAR | 74 MAKE | 75 MODEL | 76 BODY STYLE | 77 COLOR | 78 TAG NUMBER | 79 STATE | 80 IDENTIFYING FEATURES/VIN |
|---|---|---|---|---|---|---|---|---|
| | | Buick | | 4dr | blue | 7DN A03 | MD | |

| 81 ☐IMPOUNDED ☐STOLEN ☐RECOVERED ☐SEIZED | REMOVED TO Secured on Scene | REMOVED BY Secured on Scene | 82 NCIC ☐ TELETYPE ☐ RADIO LOOKOUT ☐ |
|---|---|---|---|

| 83 ARREST(S) DATE | 84 TIME | 85 CHARGE(S) | 86 COURT DATE | 87 VALUE STOLEN | 88 VALUE RECOVERED |
|---|---|---|---|---|---|
| 11/14/07 | 1953 | CSA PWID COCAINE W/ARMED | 11/15/07 | $ ---- | $ |

| 89 ITEM | NARRATIVE: (1) CONTINUATION OF ABOVE ITEMS, INDICATE ITEM NUMBER AT LEFT, INCLUDE ADDITIONAL WITNESSES AND SUSPECTS. (2) INDICATE HOW NOTIFIED OF INCIDENT, DESCRIBE DETAILS OF INCIDENT. (3) DESCRIBE PROPERTY AND ITS VALUE. | 90 STL | 91 REC | 92 PROP | 93 VALUE |
|---|---|---|---|---|---|
| | Taurus 9mm Semi-Automatic Handgun Model PT99 Ser#TKE93773AFD w/magazine containing 15 rounds ammunition. | | XX | | |
| | Approximately 519 grams Cocaine Recovered | | XX | | $51,900.00 |
| | Approximately   3 grams Marijuana Recovered | | XX | | $   30.00 |

On 11/14/2007 at approximately 1953 hours, Terrence Walters was arrested on Galveston Street w/o S. Capitol Street SW pursuant to a traffic stop.  Walters was transported to D/5 where he was charged with CSA PWID COCAINE W/ARMED.  Walters was later transported to CCB for presentment in court on 11/15/07.

Time clear 2400 hours.

| 94 INVESTIGATOR NOTIFIED |
|---|
| |

| 95 STATUS: ☐ OPEN ☐ SUSPENDED | CLOSED BY: ☒ARREST ☐ EXCEPTION ☐ UNFOUNDED | 96 DISPOSITION: | |
|---|---|---|---|

| 97 REPORTING OFFICER | BADGE/ID | DATE | 98 ASSISTING OFFICER | BADGE/ID | 99 SUPERVISOR | BADGE/ID | DATE |
|---|---|---|---|---|---|---|---|
| Det. G. Luppino | 0 6 8 7 | 11/14/07 | Sgt. G. Monahan | | | | |

*U.S. GPO: 2000-516-308/94528

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

### 3790B MARTIN LUTHER KING AVENEUE, APARTMENT NUMBER 7B
### SOUTHEAST, WASHINGTON, D.C.

1.    For the entire residence located at 3790B Martin Luther King Avenue, Apartment Number 7B Southeast, Washington, DC.  The residence known as 3790B is located on the east side of Martin Luther King Avenue, in the 3700 block.   The residence is bordered to the south by Halley Place.  The residence is more particularly described as a 3 story attached red brick apartment building.  The front door to the apartment building 3790B is a lock out and has a glass door with a silver handle on the right hand side of the door.  The numbers "3790B" are white in color and attached to the glass of the front door to the residence.  The numbers "3790B" are also on a wood placard above the front door.  The residence attached to "3790B" is numbered "3790A".  The door to the apartment is red in color with a brass colored doorknob and deadbolt on the left hand side of the door.  There is a door knocker on the upper center portion of the door with the numbers "7B" in black.  The apartment door to the right of "7B" is numbered "8B".  In the front grass of the apartment building is a sign that says HALLEY HOUSE APARTMENTS.

2.    Your affiant is Andrew Keness, a member of the United States Park Police, since October 1993.  Your affiant has been assigned to the Criminal Investigations Branch, Narcotics and Vice Unit, as an Investigator since 1999.  During your affiant's tenure as an officer, your affiant has been involved in excess of 300 drug related arrests, where your affiant has become familiar with drug related paraphernalia used in the packaging of various narcotic-controlled substances.  Your affiant has been involved in the preparation and execution of more then fifty narcotic and firearm-related search warrants, many of which have resulted in the seizure of illegal narcotics, firearms, and associated paraphernalia, monetary assets, documents substantiating drug trafficking activities, digital paging devices and cellular phones, photographs depicting co-conspirators as well as other contraband related to ongoing criminal enterprise of the drug trade.

3.    Except as otherwise noted, the facts and information set forth in this affidavit are based upon the affiant's personal knowledge, training observations, experience, and investigation, along with the findings and observations of other investigators involved in this investigation.  All observations referenced below that were not personally made by your affiant, were either relayed directly to your affiant by persons who made such observations or by those who corroborated such information, or were reported in substance or in part on reports that your affiant has read or reviewed.  Since this affidavit is being submitted for the purpose of establishing probable cause, your affiant has not included each and every fact known to the government, as this application is only intended to contain information necessary to support probable cause for this warrant.

1

**SUBSCRIBED AND SWORN TO BEFORE ME THIS** _____ **DAY OF** _____ 20___

_____
JUDGE, SUPERIOR COURT OF THE DISTRICT OF COLUMBIA.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

4.    Based on your affiant's training experience and participation in narcotic-related investigations, your affiant has personal knowledge that individuals that traffick in narcotics, maintain books, records, receipts, notes, ledgers, safe deposit keys along with other papers and documents relating to transportation, ordering, purchase and distribution of controlled substances as well as the nature, scope, extent and methods of operation of illegal drug-trafficking activities in their residence.  Likewise, narcotic-traffickers frequently carry firearms on their person or keep firearms in their vehicles or house in order to facilitate their drug-trafficking activities and as a way to protect themselves and their product from rival drug organizations.  Additionally, your affiant knows that these same individuals keep receipts bank statements, money drafts, letters of credit, money orders, cashier checks, bank checks, currency counting machines and other items evidencing the obtaining, secreting transfer or concealment of assets in the form of U.S. currency, and other financial instruments.  Your affiant knows that the aforementioned items, are generally maintained in a secure area so the narcotics trafficker can gain ready access to them and protect them from discovery from law enforcement.

### SUMMARY OF INVESTIGATION

5.    On November 14, 2007, at approximately 1953 hours, Detective Luppino and Detective Sergeant Monahan both United States Park Police Officers conducted a traffic stop on a Buick blue in color bearing MD registration 7DNA03 at Galveston Street west of South Capitol Street Southeast, Washington, DC.  The driver of the vehicle verbally identified himself as Terrance WALTERS.  While D/Sgt. Monahan was talking with WALTERS he detected a odor of burnt marijuana emanating from the vehicle.  In response to questions WALTERS directed officers to his outer right jacket pocket which contained a clear section of cellophane with green leafy substance of suspected marijuana.  A further search of WALTERS revealed $2360.00 of U.S. Currency and a cellular phone.  A search of the vehicle revealed a black and blue BMW knapsack located on the right rear passenger floorboard.  A search of the knapsack revealed a Taurus PT99 9mm semi-automatic handgun that was loaded with fifteen (15) 9mm rounds in the magazine.  Also in the knapsack was a clear ziplock bag containing another clear ziplock bag with a white powder substance of suspected cocaine.  Additionally in the knapsack were numerous documents in the name Terrance WALTERS and the address of 3790 Martin Luther King Avenue, Apartment Number 7B, Southeast, Washington, D.C.  WALTERS was placed under arrest and transported to United States Park Police District 5 for processing.  At D-5, WALTERS was charged with PWID Cocaine While Armed.  The suspected cocaine was field-tested and yielded a positive color reaction for cocaine base, and the suspected marijuana was field-tested and yielded a positive color reaction for the presence of THC.  The total weight of the cocaine weighed approximately 519 grams, and the total weight of the marijuana weighed

2

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ 20 _____

_____
JUDGE, SUPERIOR COURT OF THE DISTRICT OF COLUMBIA.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

approximately 3 grams.

6.      A computer check of WALTER'S criminal history shows that he has previous arrest in the District of Columbia and New York on (1): 05/10/88 for Robbery, Possession of a weapon in New York, (2): 03/6/92 Armed Robbery Warrant, Possession With intent to Distribute Crack in DC, (3): 07/16/92 Assault-Simple in menacing Matter in DC, (4): 11/04/92 Murder 2nd Degree in new York.

7.      At the time of his arrest WALTERS had mail matter and bank statements in the vehicle with the address 3790 Martin Luther King Avenue, Apartment 7B, Southeast, Washington, D.C. WALTERS also had keys on him that open the front door of 3790B Martin Luther King, Avenue, Southeast, Washington, D.C. and the mailbox for 7B in the apartment building has the name WALTERS.

8.      In summary, based on the information and facts recited in the paragraphs above, your affiant believes that Terrence Stevan WALTERS is utilizing 3790B Martin Luther King Avenue, Apartment Number 7B Southeast, Washington, DC, to store documents relating to his criminal enterprise, therefore, I respectfully request a search warrant authorizing the seizure of all documents, narcotics and drugs, any weapons or paper work related to ownership of weapons, any gun cleaning kits, ammunition, magazines, holsters, and any other contraband to include documents such as ledgers, phone books, address books, receipts, canceled checks, money orders, monies, vehicle titles, photographs, and other paperwork denoting narcotic sales and/or receipts of narcotic transactions.

3

SUBSCRIBED AND SWORN TO BEFORE ME THIS ____ DAY OF _____ 20__

_____
JUDGE, SUPERIOR COURT OF THE DISTRICT OF COLUMBIA.

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
UNITED STATES PARK POLICE

| | INCIDENT NUMBER |
|---|---|
| 0 7 | 0 5 0 0 6 0 |

LOCATION CODE

# EVIDENCE/PROPERTY CONTROL RECEIPT

☒ EVIDENCE    ☐ FOUND PROPERTY    ☐ SAFEKEEPING

OFFENSE/INCIDENT: Weapons Offense – 1 Arrest    DATE: 11/14/07   TIME: 1953hrs.

LOCATION: Galveston Street w/o South Capitol   OFFICER: Luppino, G.    BADGE #: 687

PROPERTY #: _____ NARCOTIC #: _____ DEA LAB #: _____ MCL #: _____

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|---|---|---|---|
| N 1 | 1 | Black with brown handle PT 99 Taurus Serial #TKE93773AFD | Blue and Black BMW backpack on rear driver's side seat to Hodge to Evidence |
| N 1A | 1 | Black metal 15 round magazine | Inside weapon |
| N 1B | 15 | Jacketed hollow point 9mm luger rounds | Inside magazine |

☐ NCIC CHECK MADE

EVIDENCE/PROPERTY OBTAINED FROM: Walters, Terrence Stevan

OWNER: _____ DEFENDANT(S): _____

OWNER'S ADDRESS: _____

RECOVERED/RECEIVED BY: Hodge, T.    DATE: 11/14/07   TIME: 1953hrs.

ADDRESS: _____

PROPERTY MAY BE:   RELEASED:   YES ( )   NO ( )   ITEM(S): _____

     DESTROYED:   YES ( )   NO ( )   ITEM(S): _____

CASE INVOLVES ASSET FORFEITURE:   YES ( )   NO ( )   ITEM(S): _____

CASE UNDER APPEAL:   YES ( )   NO ( )

| R.W. SCHERR | #678 | 11/14/07 | | OFFICER/AUSA OR STATES ATTORNEY |
|---|---|---|---|---|
| OFFICER SIGNATURE | BADGE | DATE | | SUPERVISOR SIGNATURE   DATE |

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
UNITED STATES PARK POLICE

| YR | | INCIDENT NUMBER | | | | | |
|----|----|----|----|----|----|----|----|
| 0 | 7 | ■ | 0 | 5 | 0 | 0 | 6 | 0 |

LOCATION CODE

# EVIDENCE/PROPERTY CONTROL RECEIPT

[X] EVIDENCE          [ ] FOUND PROPERTY          [ ] SAFEKEEPING

OFFENSE/INCIDENT: Weapons Offense – Gun – 1 Arrest      DATE: 11/14/07    TIME: 1953

LOCATION: Galveston St. W/O S. Cap. St. SE    OFFICER: Luppino          BADGE#: 687

PROPERTY #: _____    NARCOTIC #: _____    DEA LAB #: _____    MCL #: _____

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|--------|----------|----------------------------------|--------------------|
| N2 | 1 | A Motorola 1885 cellular phone with charger | coc: from the front seat of def: Walters' vehicle to Luppino to Monahan to PB. |
| N3 | 1 | A black/blue BMW knapsack | coc: from right rear passenger floorboard of def: Walters' vehicle to Hodge to Monahan to PB. |
| N4 | – | Numerous items of miscellaneous paper-work | coc: from within the knapsack located on the right rear passenger floorboard to Hodge to Monahan to PB. |
| N5 | 1 | A BlackBerry T-Mobile cellular phone | coc: from def: Walters' person to Monahan to PB. |

*************************end of list******************************************
evidence

[ ] NCIC CHECK MADE

EVIDENCE/PROPERTY OBTAINED FROM: ____ see coc

OWNER: _____    DEFENDANT(S): Walters, Terence Steven

OWNER'S ADDRESS: 5011 Plata St. Clinton, MD 20735

RECOVERED/RECEIVED BY: Luppino/Hodge/Monahan      DATE: 11/14/07    TIME: 1953

ADDRESS: USPP CIB MCU

PROPERTY MAY BE: . RELEASED:    YES ( )    NO (X)    ITEM(S): all
                   DESTROYED:    YES ( )    NO (X)    ITEM(S): all
CASE INVOLVES ASSET FORFEITURE:    YES ( )    NO (X)    ITEM(S): all

CASE UNDER APPEAL: YES ( )    NO ( )                    OFFICER/AUSA OR STATES ATTORNEY

D/Sgt. G.T. Monahan #822    11/14/2007

OFFICER SIGNATURE        BADGE        DATE        SUPERVISOR SIGNATURE        DATE

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
UNITED STATES PARK POLICE

| | | | YR | | INCIDENT NUMBER | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | 0 | 7 | ■ | 0 | 5 | 0 | 0 | 6 | 0 |

LOCATION CODE

| | | | |
|---|---|---|---|

# EVIDENCE/PROPERTY CONTROL RECEIPT

[xx] EVIDENCE      [ ] FOUND PROPERTY      [ ] SAFEKEEPING

OFFENSE/INCIDENT: Weapons Offense-Gun    (one arrest)    DATE: 11/14/07    TIME: 1953

LOCATION: Galveston St. w/o S. Capitol St. SW    OFFICER: Det. G. Luppino    BADGE#: 687

PROPERTY #: _____   NARCOTIC #: _____   DEA LAB #: _____   MCL #: _____

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|---|---|---|---|
| N6 | 1 | United States of America Passport for Terrence Walters | From within black/blue BMW backpack to Hodge to Monahan to Luppino to Evidence |
| N7 | 1 | Envelope addressed to Terrence Walters at 3790 MLK AVE SE APT#7B | From same as above |
| N8 | 1 | Western Union receipt sender/ Terrence Walters | From same as above |
| N9 | 1 | Delta Airlines boarding pass in the name Terrence Walters | From same as above |
| N10 | 1 | New Jersey State Police citation in the name  Terrence Walters | From same as above |
| N11 | 1 | MD MVA Registration in the name of Terrence Walters | From same as above |
| N12 | 1 | Times Square hotel receipt in the name of Terrence Walters | From same as above |
| N13 | 1 | Sheehy receipt to Terrence Walters | From same as above |
| N14 | 1 | Creative Playthings receipt to Terrence Walters | From same as above |
| N15 | 5 | Bank of America receipts for Terrence Walters | From same as above |
| N16 | 1 | DVC Cassette tape | [ ] NCIC CHECK MADE From same as above |

EVIDENCE/PROPERTY OBTAINED FROM: BMW Backpack

OWNER: Terrence Walters    DEFENDANT(S): Terrence Walters

OWNER'S ADDRESS: 5011 Plata Street    Clinton, Maryland  20735

RECOVERED/RECEIVED BY: Det. G. Luppino    DATE: 11/14/07    TIME: PM

ADDRESS: USPP/CIB/MCU

PROPERTY MAY BE:   RELEASED:   YES ( )   NO (xx)   ITEM(S): ALL

DESTROYED:   YES ( )   NO (xx)   ITEM(S): ALL

CASE INVOLVES ASSET FORFEITURE:   YES ( )   NO (xx)   ITEM(S): ALL

CASE UNDER APPEAL: YES ( )   NO ( )

Det. G. Luppino  #687    11/14/07
OFFICER SIGNATURE    BADGE    DATE

OFFICER/AUSA OR STATES ATTORNEY

_____
SUPERVISOR SIGNATURE    DATE

USPP FORM 43–11
Rev. 1/91

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
UNITED STATES PARK POLICE

| | YR | | INCIDENT NUMBER |
|---|---|---|---|
| | 0 7 | ▓ | 0 5 0 0 6 0 |

# EVIDENCE/PROPERTY CONTROL RECEIPT

| LOCATION CODE |
|---|
| 5 6 0 |

[x] EVIDENCE        [ ] FOUND PROPERTY        [ ] SAFEKEEPING

OFFENSE/INCIDENT: Weapons Offense – 1 Arrest        DATE: 11/14/07    TIME: 1953

LOCATION: Galveston St w/o S. Capitol St SW    OFFICER: G. Luppino        BADGE#: 687

PROPERTY #: _____    NARCOTIC #: _____    DEA LAB #: _____    MCL #: _____

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|---|---|---|---|
| N17 | 1 | Box; Phillies Blunt Strawberry containing 2 wrapped brown cigars | front center seat of 1982 Buick TO Hodge |
| XXXXX | XXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
| | | End of list | |
| | | EVIDENCE | |
| | | | [ ] NCIC CHECK MADE |

EVIDENCE/PROPERTY OBTAINED FROM: Buick bearing MD tag 7DN A03

OWNER: N/A                    DEFENDANT(S): WALTERS, Terrence Steven

OWNER'S ADDRESS: N/A

RECOVERED/RECEIVED BY: Inv. T. Hodge        DATE: 11/14/07    TIME: 2000

ADDRESS:        US Park Police CIB/MCU

PROPERTY MAY BE:    RELEASED:    YES ( )  NO (X)    ITEM(S): A11
                    DESTROYED:   YES ( )  NO (X)    ITEM(S): A11
CASE INVOLVES ASSET FORFEITURE:    YES (x)  NO ( )    ITEM(S): A11

CASE UNDER APPEAL    YES ( )  NO ( )                    OFFICER/AUSA OR STATES ATTORNEY

Inv. T. Hodge _____ 418 _____ 11/14/07
OFFICER SIGNATURE    BADGE    DATE                SUPERVISOR SIGNATURE    DATE

# EVIDENCE/PROPERTY CONTROL RECEIPT

LOCATION CODE
5 6 0 0

[X] EVIDENCE    [ ] FOUND PROPERTY    [ ] SAFEKEEPING

OFFENSE/INCIDENT: Weapons Offense – 1 Arrest          DATE: 11/14/07   TIME: 1953

LOCATION: Galveston St w/o S. Capitol St SW   OFFICER: G. Luppino          BADGE#: 687

PROPERTY #: _____   NARCOTIC #: _____   DEA LAB #: _____   MCL #: _____

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|--------|----------|----------------------------------|--------------------|
| 2 | | Off White Powdered substance | within Item 2a |
| 2a | 1 | Clear plastic ziplock bag labeled "Ziploc Brand Bags Sacs de marque" | containing Item 2 and within Item 2b |
| 2b | 1 | Clear plastic ziplock bag labeled "Ziploc Brand Bags Sacs de marque" | within black and blue BMW back pack's back pocket |
| XXXXX | XXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
| | | End of List | |
| | | Evidence – To Be Analyzed | |

[ ] NCIC CHECK MADE

EVIDENCE/PROPERTY OBTAINED FROM: ___Buick bearing MD tag 7DN A03___

OWNER: ___N/A___          DEFENDANT(S): WALTERS, Terrence Steven

OWNER'S ADDRESS: ___N/A___

RECOVERED/RECEIVED BY: Inv T. Hodge          DATE: 11/14/07   TIME: 2000

ADDRESS: ___US Park Police CIB/MCU___

PROPERTY MAY BE:   RELEASED:  YES ( )   NO (X)   ITEM(S): All
                   DESTROYED: YES ( )   NO (X)   ITEM(S): All

CASE INVOLVES ASSET FORFEITURE:   YES (x)   NO ( )   ITEM(S): All

CASE UNDER APPEAL: YES ( )   NO ( )          OFFICER/AUSA OR STATES ATTORNEY
_____

Inv T. Hodge _____ 418      11/14/07          _____
OFFICER SIGNATURE   BADGE   DATE          SUPERVISOR SIGNATURE   DATE

USPP FORM 43-11
Rev. 1/91

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
UNITED STATES PARK POLICE

| YR | | INCIDENT NUMBER | | | | |
|---|---|---|---|---|---|---|
| 0 | 7 | | 0 | 5 | 0 | 0 | 6 | 0 |

# EVIDENCE/PROPERTY CONTROL RECEIPT

| LOCATION CODE |
|---|
| 5 | 6 | 0 | 0 |

[X] EVIDENCE          [ ] FOUND PROPERTY          [ ] SAFEKEEPING

OFFENSE/INCIDENT: Weapons Offense – 1 Arrest          DATE: 11/14/07   TIME: 1953

LOCATION: Galveston St w/o S. Capitol St SW   OFFICER: G. Luppino          BADGE#: 687

PROPERTY #: _____   NARCOTIC #: _____   DEA LAB #: _____   MCL #: 07-402

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|---|---|---|---|
| 2c | 3 | hair strands (dark in color) | within Item 2b |
| | | End of List | |
| | | EVIDENCE | |

[ ] NCIC CHECK MADE

EVIDENCE/PROPERTY OBTAINED FROM: Buick bearing MD tag 7DN A03

OWNER: N/A          DEFENDANT(S): WALTERS, Terrence Steven

OWNER'S ADDRESS: N/A

RECOVERED/RECEIVED BY: K. Blackmore #36          DATE: 11/14/07   TIME: 2200

ADDRESS: US Park Police ID

PROPERTY MAY BE:   RELEASED:   YES ( )   NO (XX)   ITEM(S): All
                   DESTROYED:   YES ( )   NO (XX)   ITEM(S): All

CASE INVOLVES ASSET FORFEITURE:   YES (XX)   NO ( )   ITEM(S): All

CASE UNDER APPEAL: YES ( )   NO ( )

_____
OFFICER/AUSA OR STATES ATTORNEY

Inv T. Hodge          #418          11/14/07
OFFICER SIGNATURE   BADGE   DATE

_____
SUPERVISOR SIGNATURE   DATE

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
UNITED STATES PARK POLICE

| | | YR | | | INCIDENT NUMBER |
|---|---|---|---|---|---|
| 0 | 7 | ■ | 0 | 5 | 0 | 0 | 6 | 0 |

# EVIDENCE/PROPERTY CONTROL RECEIPT

LOCATION CODE

☐ EVIDENCE        ☐ FOUND PROPERTY        ☐ SAFEKEEPING

OFFENSE/INCIDENT: WEAPONS OFFENSE – 1 ARREST _____ DATE: 11/14/07 _ TIME: 1953

LOCATION: Galveston St. w/o South Capitol _ OFFICER: Luppino, G. _____ BADGE#: 687

PROPERTY #: _____ NARCOTIC #: _____ DEA LAB #: _____ MCL #: _____

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|---|---|---|---|
| 3 | 12 | $20.00 U.S. Currency | Front left pants pocket of Walters to Monahan to Scherr to Evidence. |
| | 12 | $10.00 U.S. Currency | "" "" |
| | | $1.12  U.S. Currency Change | "" "" |
| 4 | | Total – $361.12 | |
| | 70 | $20.00 U.S. Currency | Right Rear pants pocket of Walters to Monahan to Scherr to Evidence |
| | 2 | $50.00 U.S. Currency | "" "" |
| | 5 | $100.00 U.S. Currency | "" "" |
| | | Total – $2,000.00 | |
| | | | ☐ NCIC CHECK MADE |

EVIDENCE/PROPERTY OBTAINED FROM: _____

OWNER: _____ DEFENDANT(S): Walters, Terrence Stevan

OWNER'S ADDRESS: _____

RECOVERED/RECEIVED BY: Luppino, G. _____ DATE: 11/14/07 _ TIME: 1953hrs.

ADDRESS: USPP – CIB

PROPERTY MAY BE:    RELEASED:    YES ( )  NO ( )  ITEM(S): _____

DESTROYED:    YES ( )  NO ( )  ITEM(S): _____

CASE INVOLVES ASSET FORFEITURE:    YES ( )  NO ( )  ITEM(S): _____

CASE UNDER APPEAL: YES ( )  NO ( )

OFFICER/AUSA OR STATES ATTORNEY

Det. R.W. SCHERR          #678          11/14/07
OFFICER SIGNATURE        BADGE        DATE                SUPERVISOR SIGNATURE      DATE

UNITED STATES DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
UNITED STATES PARK POLICE

INCIDENT NUMBER

| 0 | 7 | | 0 | 5 | 0 | 0 | 6 | 0 |

LOCATION CODE

# EVIDENCE/PROPERTY CONTROL RECEIPT

☐ EVIDENCE      ☑ FOUND PROPERTY      ☐ SAFEKEEPING

OFFENSE/INCIDENT: __WEAPONS OFFENSE – 1 ARREST__        DATE: __11/14/07__  TIME: __1953hrs.__

LOCATION: __Galveston St. w/o South Capitol__  OFFICER: __Luppino, G.__        BADGE#:__687__

PROPERTY #: _____  NARCOTIC #: _____  DEA LAB #: _____  MCL #: _____

| ITEM # | QUANTITY | DESCRIPTION OF EVIDENCE/PROPERTY | LOCATION RECOVERED |
|--------|----------|----------------------------------|--------------------|
| 4 | 1 | Silver metal cylander containing small amount of leafy green plant-like substance | Blue and Black BMW backpack to Daniels to Scherr to Evidence |

☐ NCIC CHECK MADE

EVIDENCE/PROPERTY OBTAINED FROM: _____

OWNER: _____  DEFENDANT(S): __Walters, Terrence Stevan__

OWNER'S ADDRESS: _____

RECOVERED/RECEIVED BY: __Luppino, G._____        DATE: __11/14/07__  TIME: __1953hrs.__

ADDRESS: __USPP – CIB__

PROPERTY MAY BE:    RELEASED:    YES ( )   NO ( )    ITEM(S): _____

DESTROYED:    YES ( )   NO ( )    ITEM(S): _____

CASE INVOLVES ASSET FORFEITURE:    YES ( )   NO ( )    ITEM(S): _____

CASE UNDER APPEAL:  YES ( )   NO ( )

Det. R.W. Scherr        #678        11/14/07                          _____
OFFICER SIGNATURE      BADGE      DATE                 OFFICER/AUSA OR STATES ATTORNEY

SUPERVISOR SIGNATURE      DATE

PD 32 Rev. 3/03

# METROPOLITAN POLICE DEPARTMENT
## Washington, D.C.

### Certificate of Record/No Record of Firearms Registration Certificate

Quoted hereinafter, an order of the Chief of Police, as contained in General Order 902.1 relative to records under the control of the Chief of Police by reason of the Firearms Control Regulations Act of 1975:

> *"The responsibility and authority for establishing and maintaining records of a police nature relative to the issuance of a Firearms Registration Certificate pursuant to provisions of the Firearms Control Act of 1975 and the authority to provide the courts of the District of Columbia certification relating to such records is hereby vested in the Director, Business Services Division."*

This is to certify that the records of the Metropolitan Police Department relating to the issuance of Firearm Registration Certificates are in my custody and control, pursuant to the above-quoted directive of the Chief of Police of which I certify the foregoing is a true and accurate copy, and state that a diligent search has been made of those records for information concerning the following described person:

| NAME | SEX | AGE | DATE OF BIRTH |
|------|-----|-----|---------------|
| Walters, Terrence | M | 37 | 8/22/70 |
| **ADDRESS** | | **FIREARMS REGISTRATION NUMBER** | |
| 5011 PLATA ST CLINTON, MD 20735 | | None | |

According to the records of this department the above-named person ☐ did ☑ did not on 11/14/07 have a Firearms Registration Certificate issued or pending for the below-described firearm/ammunition:

| FIREARMS ONLY | | |
|---------------|--|--|
| **Name** | **Caliber** | **Action** |
| TAURUS | 9MM | SEMI |
| **Number of Shots** | **BBL Length** | **Serial Number** |
| 15 | 4 7/8 | TKE93773AFD |
| **AMMUNITION ONLY** | | |
| **Name** | **Caliber** | |
| Any | 9MM | |

Certified as correct by: AMK

*Signature of Employee Researching Records*

(SEAL)

*Supervisor, Firearms Registration Section*
*Business Services Division*

11/15/07
*Date*

PD 36 Rev. 3/03

## METROPOLITAN POLICE DEPARTMENT
### Washington, D.C.

**CERTIFICATE OF NO RECORD OF A LICENSE TO CARRY A PISTOL**

Quoted hereafter, an order of the Chief of Police, as contained in General Order 902.1 relative to records under the control of the Chief of Police by reason of Title 22, Section 4506 of the D.C. Code.

> *"The responsibility and authority for establishing and maintaining records of a police nature relative to the issuance of a license to carry a pistol, pursuant to Title 22, Section 4506 of the District of Columbia Code and the authority to provide to the courts of the District of Columbia certification relating to such records, which was previously performed by the Executive Officer, is hereby vested in the Director, Business Services Division."*

This is to certify that the records of the Metropolitan Police Department relating to the issuance of licenses to carry a pistol are in my custody and control, pursuant to the above-quoted directive of the Chief of Police of which I certify the foregoing is a true and accurate copy, and state that a diligent search has been made of those records for information concerning the following described person:

| NAME | SEX | RACE | AGE |
|------|-----|------|-----|
| WALTERS, TERRENCE | M | B | 37 |

ADDRESS

5011 PLATA ST CLINTON, MD 20735

According to the records of this department, the above-named person did not on 11/14/07 have a license to carry a pistol in the District of Columbia nor, does not now have such a license.

**Certified as correct by: AMK**

_____
Signature of Employee Researching Records

(SEAL)

_____
Supervisor, Firearms Registration Section
Business Services Division

11/15/07
*Date*