## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 07-346 (JDB)** |
| v. | : | |
| | : | |
| **TERRENCE S. WALTERS,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S
### MOTIONS TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits this opposition to defendant's Motion to Suppress

Physical Evidence and Statements. The government relies upon the points and authorities set out

in this memorandum and at any hearing on this matter.

Defendant's motion must be denied on any of several grounds. First, there was no

infirmity with defendant's stop because officers had probable cause that his vehicle was in

violation of the District's law on tint violations, see D.C. Code § 50-2207.02 (a), and defendant

was subsequently ticketed for a window tint violation. Nor does it matter whether the officers'

subjective intent was to issue traffic citations or look for drugs because an officer's subjective

intentions are irrelevant in a traffic stop. Whren v. United States, 517 U.S. 806, 810 (1996).

Once the vehicle was stopped, officers detected the smell of burning marijuana emanating from

the car. This fact alone gave officers probable cause to search the vehicle. United States v. Ross,

456 U.S. 798 (1982); United States v. Turner, 119 F.3d 18, 20 (D.C. Cir. 1997). But police

gathered additional evidence establishing probable cause when they asked defendant where the

rest of the marijuana was and he gestured to his right front jacket pocket, where police then

found a bag of marijuana and a lighter.

Statements made by defendant on the scene after he was handcuffed were voluntary. Statements made by defendant at the police station were made pursuant to a valid waiver of his Miranda rights and were voluntary.

## I.    FACTS

The defendant is charged in a seven-count indictment with drug and weapons charges stemming from his constructive possession of a gun, cocaine and marijuana when his car was stopped on November 14, 2007 (Counts One, Two, Three and Four), and his constructive possession of two additional guns and cocaine when his home was searched by police on November 19, 2007 (Counts Five, Six and Seven).

On November 14, 2007, at approximately 7:53 p.m. in the evening, four officers of the United States Park Police were in an unmarked cruiser at a traffic light at the intersection of South Capitol and Galveston Streets, S.W., Washington, D.C.  At the time, officers observed a blue Buick driven by the defendant that crossed South Capitol Street in front of them.  In the light of the streetlights in the area and the ambient city light, Detective Glenn Luppino, who was driving, observed that defendant's windows appeared to be unusually dark and possibly tinted in violation of D.C. law.  Then the vehicle passed directly in front of the officers' headlights.  In this illumination, Detective Luppino was able to ascertain that the windows on defendant's car were very dark, in fact, so dark that they were, based on Det. Luppino's experience and training, probably violating D.C. law.  Police stopped defendant's car.

Sergeant Monahan and Detective Luppino approached defendant's car on the driver's side.  Both officers detected the distinctive smell of burning marijuana emanating from the

2

driver's open window as they approached.  Defendant appeared nervous.  Sergeant Monahan told

the defendant, who was the only person in the car, that he could smell the marijuana and asked

him if there was any more marijuana in the car.  Defendant gestured with his left hand to his right

jacket pocket.  Sergeant Monahan grabbed defendant's hand, and said no, let me get it.  Detective

Luppino then removed a small bag of marijuana and a lighter from defendant's pocket.  On the

front center seat of defendant's car police found a box of "Phillies Blunt Strawberry" cigars.

Defendant was placed under arrest.

     Search incident to arrest of defendant's person revealed $2360 in U.S. currency and a cell

phone.  The officers also located a backpack on the floorboard behind the passenger seat.  Inside

the backpack was 519 grams of a white powder in a large ziplock freezer bag, which powder

field-tested positive for cocaine.  Also inside the bag police found a Taurus 9 mm semi-automatic

handgun.  The gun was loaded and later found to be operable.  Also inside the backpack was mail

matter and Bank of America documents bearing the defendant's name, defendant's passport, and

a wallet containing defendant's driver's license.

     On the scene, Det. Timothy Hodge conducted a test of the window tint in defendant's

front passenger windows.  Although both Hodge and Luppino are trained to issue tickets for tint

violations, Det. Hodge had the tint meter with him in the car with Det. Luppino at the time of the

stop and he conducted the test.  The test revealed that the tint on defendant's front driver's side

window permitted only ten percent of light pass through, in violation of D.C. Code § 50-2207.02

(a) that requires that the front side windows of cars permit seventy percent of light to pass

through.  A photograph was taken of the tint meter's reading to memorialize the test.  Defendant

was subsequently issued a $50 ticket for his tint violation.

On the scene, defendant had a conversation with Sergeant Monahan in the police car in which defendant admitted that he was a drug dealer. After police found the marijuana on defendant, they placed defendant in the front seat of a police cruiser. Sergeant Monahan sat next to him. Monahan said to him, "so what are you, a drug dealer." Defendant stated, "I'm a record producer." Monahan replied, "what is that, code for being a drug dealer?" Defendant stated, "yeah." As defendant and Monahan watched police search defendant's car, defendant asked Monahan, "so what, is this a big bust for you guys?" Defendant also acknowledged to Sergeant Monahan that he would be going to prison for a long time because of this bust.

At the police station that night, defendant waived his rights and gave a short videotaped statement.

On November 19, 2007, officers executed a search warrant on 3790 Martin Luther King Avenue, S.E., Apartment 7B, Washington, D.C. They believed that this apartment belonged to the defendant based on mail matter found in the backpack and the fact that defendant's name was on the mail box. They also found that a set of keys found on defendant at his arrest had a key that opened the outer door to the apartment building at that location. Inside the apartment, the officers located thirty-three grams of a rock substance that field-tested positive for crack cocaine. Twenty-nine grams were located in a cabinet above the refrigerator and four grams were located in a shoe box in the apartment's only bedroom. The officers found drug paraphernalia, including scores of empty ziplock bags, electric scales, silverware with white powder residue, a white pot with white powder residue, and three large plastic bags with duct tape and white powder residue. The officers also found tally sheets that contained names and phone numbers and the word "weed." Finally, the officers located an unloaded .380 caliber semi-automatic handgun, a loaded

4

.45 caliber semi-automatic handgun, ammunition for the .45 caliber weapon, a magazine to a

Glock .40 caliber handgun, and a cleaning kit for a .22 caliber handgun.

II.    **ARGUMENT**

Defendant now argues that the evidence and his statements must be suppressed, for the

following reasons: (1) the police had no basis to stop him and the stop was pretextual; (2) the

police had no basis to search defendant's person or the interior of his car; and that (3) all

evidence seized in defendant's car or the search warrant at his apartment should be suppressed as

fruit of the poisonous tree.  Defendant also claims that (4) all statements made by defendant on

the night of his arrest were made in violation of Miranda and were involuntary.  Finally,

defendant argues that (5) police knowingly and intentionally omitted information from the search

warrant which information, had it been included would have been material to the finding of

probable cause.  All of defendant's arguments fail, and his motion must be denied, for the

reasons discussed below.

       **A.**     **The officers had probable cause to stop the defendant's vehicle.**

In Whren v. United States, 517 U.S. 806, 810 (1996), the Supreme Court held that the

police may stop an automobile "where the police have probable cause to believe that a traffic

violation has occurred."  The actual motives of the police are irrelevant, and courts will not

inquire into whether the reason for the stop was pretextual, as long as probable cause for the stop

existed.  Id.; United States v. Holmes, 385 F.3d 786, 790 (D.C. Cir. 2004).

In the instant case, the officers observed the defendant driving a vehicle that, based on

their experience and training, appeared to have windows significantly in violation of the District

of Columbia's tint statute.  They thus had probable cause that a traffic violation had occurred and

had probable cause to stop his vehicle and inquire further.  A tint violation is not an arrestable offense, and thus the defendant was not under arrest at that point.  Defendant's arguments that the stop was pretextual are irrelevant under Wren, as long as the police had probable cause to stop the defendant's vehicle.

Defendant mistakenly relies on dictum in United States v. Green, 465 F.2d 620, 623 n. 5 (D.C. Cir. 1972), see Def. Mot. at 3.  The reasoning in that dictum, and in the cases it cites, has been superceded by Wren.  As the D.C. Circuit recently summarized, "[t]he propriety of a search under the Fourth Amendment depends on 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' Scott v. United States, 436 U.S. 128, 136 (1978), and not on the officer's own subjective intent in executing the search.  See Wren v. United States, 517 U.S. 806, 812-13 (1996)."  Holmes, 385 F.3d at 790.  Defendant also relies on United States v. Bullock, 215 F. Supp. 2d 174 (D.D.C. 2002), Def. Mot. at 3, but that case does not help him here.  In Bullock, police had no probable cause to make the stop – thus Wren did not apply.  In this case, the traffic stop was reasonable under the totality of the circumstances, even under the criteria that the defendant advances.  At least two officers in the police car were trained to issue tint citations, the officers had a tint meter with them at the time of the stop, they checked the defendant's car for a tint violation, issued a tint citation and memorialized the violation with a photograph of the tint meter reading ten percent.

**B.    The officers had probable cause to search the vehicle.**

Once the officers made contact with defendant during the traffic stop, they smelled the distinct odor of marijuana, and at that point, they had probable cause to search the vehicle.  In United States v. Ross, 456 U.S. 798 (1982), the Supreme Court held that where officers have

probable cause to believe that a vehicle contains contraband, they may search it as thoroughly as if a magistrate had authorized the search by warrant.  Several courts have upheld searches of the entire vehicle upon the establishment of probable cause that marijuana may be found inside of it. See, e.g. United States v. Turner, 119 F.3d 18, 20 (D.C. Cir. 1997) (smell of burnt marijuana emanating from car, along with pieces of torn cigar paper and zip of green weed, supported search of vehicle, including trunk); see also United States v. Zabalza, 346 F.3d 1255, 1259 (10th Cir. 2003) (smell of marijuana supported search of vehicle, including trunk); United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) (smell of marijuana supported search of vehicle); United States v. Taylor, 162 F.3d 12, 21 (1st Cir. 1998) (smell of marijuana supported search of vehicle); United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989) (smell of marijuana "in itself" supported search of vehicle).

> **C.**    **Once defendant gestured to his jacket pocket in response to a police questions at the initial traffic stop regarding whether he had any more marijuana in the car, police had probable cause to arrest defendant and search his person and the interior of the car.**

Even if the Court were to conclude that the plain smell of the burning marijuana did not establish probable cause to search, then the defendant's response to police questioning at the initial stop certainly established probable cause to arrest defendant and search his person and the interior of his car.  Sergeant Monahan told defendant when he first approached him in the car that he smelled marijuana, and wanted to know if there was more in the car.  Defendant then began reaching to his jacket pocket – a tacit admission that he had marijuana on his person.  Officers immediately and correctly interpreted defendant's gesture and grabbed defendant's hand and removed the marijuana and lighter themselves.  That defendant's statement came in response to a

question from police is of no moment.  Statements made in the context of an initial investigative

stop are not custodial.  Berkemer v. McCarty, 468 U.S. 420, 435-432 (1984); United States v.

Gale, 952 F.2d 1412, 1415-16 n.4 (1992).  Nor does it matter that police grabbed defendant's

hand and removed the marijuana themselves.  Once defendant made the gesture and thereby

admitted he had marijuana on him, then police had probable cause to arrest him and search his

person.

### D.    The officers had probable cause search the interior of the vehicle.

Once the officers smelled the odor of marijuana in the vehicle, they had probable cause to

search the vehicle.  Inside the vehicle, specifically in defendant's right outer jacket pocket, was

found a bag of marijuana and a lighter.  This discovery then gave the officers probable cause to

make a full search of the arrestee and the area within the arrestee's immediate control at the time

of the arrest.  Chimel v. California, 395 U.S. 752, 763 (1969).  So long as probable cause for the

arrest exists at the time of the search, it does not matter if the search is conducted just prior to the

arrest.  Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed

quickly on the heels of the challenged search . . . we do not believe it particularly important that

the search preceded the arrest rather than vice versa") (citing, inter alia, Bailey v. United States,

389 F.2d 305, 308 (1967) ("Even if the formal arrest was not made until after the search, the

search will be upheld so long as there is probable cause for an arrest before the search is

begun")).

The fact that the search of the vehicle may have occurred after the marijuana was found

on the defendant does not affect the fact that the police had probable cause to search the vehicle

even before they searched the defendant.  The exact order that these events occurred does not

change the fact that the police had probable cause to arrest and search the defendant.

      **E.**     **Defendant's statements were not in violation of <u>Miranda</u>, and were voluntarily made.**

The scriptures of <u>Miranda</u> are implicated only when two circumstances are both present: the defendant is in custody, and he is being interrogated. <u>Miranda v. United States</u>, 384 U.S. 436 (1966). If a suspect is in custody, but volunteers a statement in the absence of interrogation, there is no <u>Miranda</u> issue even if the suspect was not given any advice of rights. <u>Miranda</u>, 384 U.S. at 478; <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980). <u>Miranda</u>'s requirements are equally inapplicable if a suspect is questioned by the police but not in "custody" at the time. <u>See</u> <u>Beckwith v. United States</u>, 425 U.S. 341 (1976).

As the cases have made clear, the type of "custody" that requires police officers to provide a defendant with <u>Miranda</u> warnings involves circumstances where a defendant is "subjected to restraints comparable to those associated with a formal arrest." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 441 (1984). This is an objective test, not subject to the idiosyncracies of a particular defendant's point of view; "the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation." <u>Id</u>. at 442. Determining whether certain circumstances amount to a "formal arrest" for <u>Miranda</u> purposes requires a focus on whether those circumstances are equivalent to what the <u>Miranda</u> warnings are designed to protect: situations equivalent to the police stationhouse interrogation. <u>See id</u>. at 437-8 ("Fidelity to the [<u>Miranda</u> doctrine] . . . requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the [<u>Miranda</u>] decision are implicated. . . . questioning incident to an ordinary traffic stop is quite different from stationhouse

interrogation").

Amounting as it does to a "formal arrest," "custody" for purposes of Fifth Amendment Miranda analysis is clearly something more than what constitutes a "seizure" under the Fourth Amendment; "custody" and "seizure" are not synonymous.  United States v. Gale, 952 F.2d 1412, 1415-16  n.4 (D.C. Cir. 1992) ("Although appellant was not free to leave at the time Officer Stroud asked him if he had any drugs, he was subject to a limited seizure only – a Terry stop – and not a 'full-blown' arrest.  As such, the stop did not require the police to inform appellant of his Miranda rights before asking him a few brief questions designed to confirm or alleviate their suspicions . . . .  There was thus no Miranda violation in asking appellant whether he had any illegal drugs . . . .").  Thus, short of circumstances equivalent to a formal arrest, even when a defendant is subject to police restraint that rises to the level of a Terry stop, the Miranda warnings are not required.

The fact that probable cause existed for a search from the moment the officer smelled marijuana does not impact the analysis of whether, for Fifth Amendment purposes, defendant was in custody and therefore subject to Miranda's warnings.  "The mere fact that an investigation has focused on a suspect does not trigger the need for Miranda warnings in noncustodial settings . . . ."  Minnesota v. Murphy, 466 U.S. 420, 431 (1984).  "Save as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the Miranda custody inquiry."  Stanbury v. California, 511 U.S. 318, 324 (1994).

Indeed, "the existence of probable cause does not by itself compel officers to forego an investigatory stop and make an arrest."  United States v. Waltzer, 682 F.2d 379, 373 (2d Cir.

10

1982).  "Law enforcement officers are under no constitutional duty to halt a criminal

investigation the moment they have the minimum evidence to establish probable cause. . . ."

Hoffa v. United States, 385 U.S. 293, 310 (1966).  In Berkemer the state trooper "apparently

decided as soon as [defendant] stepped out of his car that [he] would be taken into custody and

charged with a traffic offense."  486 U.S. at 442.  However, the officer did not communicate his

intention to defendant.  Id.  "A policeman's unarticulated plan has no bearing on the question

whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a

reasonable man in the suspect's position would have understood his situation."  Id.

        It is clear in the instant case, as noted above, that the defendant was not in "custody" for

Fifth Amendment purposes when Sergeant Monahan asked him if there was any more marijuana

in the car.  Although probable cause to arrest him arose either shortly before or shortly after the

question was posed to him, the defendant was not placed under formal arrest until after the

marijuana  was discovered.  Thus the question put to him, whether he had any marijuana, was

merely part of the investigatory component of the stop and search of the vehicle.

        The government concedes that defendant's statements to Sergeant Monahan on the scene

while sitting in the police car post-arrest were not made pursuant to a waiver under Miranda.

They were, however, voluntary.  With respect to defendant's statement at the police station, he

executed a written Miranda waiver and those statements were voluntary.

        The government must also establish by preponderance of the evidence that the statement

defendant made was voluntarily made.  See Lego v. Twomey, 404 U.S. 477, 489 (1972).  To

determine whether a statement was voluntarily made, this Court must examine the totality of the

circumstances to determine whether the defendant's "will has been overborne and his capacity

for self-determination critically impaired." <u>See</u>  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225

(1973); <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986).  In making this determination,

> a district court must examine 'the totality of all the surrounding
> circumstances--both the characteristics of the accused and the details of the
> interrogation.'  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226, 93 S. Ct. 2041,
> 2047, 36 L. Ed.2d 854 (1973).  Relevant factors include:  the youth of the
> accused; his lack of education; or his low intelligence; the lack of any advice to
> the accused of his constitutional rights; the length of detention; the repeated and
> prolonged nature of the questioning; and the use of physical punishment such as
> the deprivation of food or sleep.

<u>United States v. Rodney</u>, 956 F.2d 295, 297 (D.C. Cir. 1992).

The government expects that, if a hearing is held on this matter, the totality of

circumstances would demonstrate that defendant's statement was voluntarily made, and that his

will was not overborne.  The defendant identifies no coercive police activity, and the

circumstances of defendant's statement, in particular, their spontaneous nature, do not suggest

that it was the product of coercive police activity, or was in any other way involuntary.

## F.    Defendant is not entitled to a <u>Franks</u> hearing.

Defendant claims that he is entitled to a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154

(1977) on the ground that defendant told police that he lived in Clinton, Maryland, but that the

affidavit for the search warrant on Martin Luther King Avenue failed to mention defendant's

claimed residence in Clinton, Maryland.  This omission, if such a self-serving statement can be

called fact at all, is not material given the strong evidence that defendant maintained the Martin

Luther King Avenue apartment as a residence.  Inclusion of defendant's statement would not

negate probable cause.  Moreover, Det. Keness did not knowingly or recklessly disregard the

truth in drafting his search warrant affidavit; in fact, he took investigative pains to deduce the

correct facts regarding defendant's residence.  Ultimately, his efforts yielded overwhelming evidence of defendant's guilt.

In order to be entitled to an evidentiary hearing a defendant must make "a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause."  Franks, 438 U.S. at 155-156; United States v. Richardson, 861 F. 2d 291, 293 (D.C. 1988).  The defendant must make a substantial showing therefore that three facts are true:  first,  that the affidavit contains a false statement, second,  that the absence of the false statement in the affidavit would negate probable cause, and third,  that the affiant made the false statement with the requisite scienter, that is, knowingly or with a reckless disregard for the truth.  Id. at 293-294 (declining to decide whether an inaccuracy in a warrant affidavit was material to probable cause in the absence of a contention that it was made intentionally or with reckless disregard for the truth).  Further,

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specific portions of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171.

Here, the specific facts that defendant claims were omitted by Detective Keness are nothing more than defendant's bald assertion upon arrest that he lived in Clinton, Maryland.  To be sure, the police repeated this claim in their paperwork as they are bound to do.  But this

13

repetition in the police paperwork hardly elevates defendant's claim into a fact.

Moreover, Detective Keness in his affidavit never claimed that the Martin Luther King Avenue apartment was defendant's sole residence.  In fact, what he told the reviewing magistrate was that "based on the information and facts recited in the paragraphs above, your affiant believes that Terrance Stevan Walters is utilizing [the Martin Luther King address] to store documents relating to his criminal enterprise . . . ." (emphasis added).  The affidavit on its face supports both the investigative theory that the Martin Luther King address was defendant's principal residence and that this was defendant's secondary residence to be used as a stash house. In either event, the probable cause as set out in the affidavit was very strong.  Defendant had recent mail matter in his knapsack when arrested with the Martin Luther King address on them. He had the keys to that apartment building on his person and his name on the mailbox to that unit. [And when the lease was ultimately obtained, it had defendant's name on it too.]  Finally, when defendant was arrested, he was stopped approximately ten blocks from the Martin Luther King address, not the Clinton, Maryland address.  A common sense reading of the affidavit reveals that any omission in the affidavit was not material because inclusion of the information would not have negated probable cause.  See, e.g. Joseph Dailey v. United States, 611 A.2d 963, 968 (D.C. 1992); see also United States v. Sumpter, 669 F.2d 1215, 1218 (8th Cir. 1982) (reasoning that whether probable cause exists to issue a search warrant is to be determined based on a commonsense reading of the entire affidavit).

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

Respectfully submitted,

JEFFERY A. TAYLOR
United States Attorney

 _/s/ David P. Saybolt_____
DAVID P. SAYBOLT
Assistant United States Attorney
Federal Major Crimes Section
VA Bar No 44518
555 4th Street, N.W.  #4840
Washington, DC 20530
(202) 307-6080; Fax: 353-9414
David.Saybolt@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO.  07-346 (JDB)** |
| v. | : | |
| | : | |
| **TERRENCE S. WALTERS,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>ORDER</u>**

Upon consideration of the Defendant's Motion to Suppress Tangible Evidence and

Statements, and the United States Opposition thereto, and the record herein, it is this _____ day

of _____, 2008, hereby

ORDERED, that defendant's motion be denied.

_____
UNITED STATES DISTRICT JUDGE