IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 1:07-CR-346 |
| | ) | |
| TERRENCE WALTERS, | ) | Hon. John D. Bates |
| | ) | |
| Defendant. | ) | |

### DEFENDANT WALTERS' REPLY TO GOVERNMENT'S OPPOSITION TO HIS MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS

NOW COMES Defendant Terrence Walters, by and through undersigned counsel, respectfully replying to the Government's Opposition to Defendant's Motion to Suppress Tangible Evidence and Statements ("Government's Response"). Defendant Walters replies as follows:

**I.    THE POLICE DID NOT HAVE PROBABLE CAUSE TO INITIALLY STOP THE DEFENDANT AND DID NOT HAVE PROBABLE CAUSE TO JUSTIFY A WARRANTLESS SEARCH OF DEFENDANT'S AUTOMOBILE**

Defendant avers that "it is the government's burden to show that probable cause existed for the stop of the car, and that the warrantless search of the car was legally justifiable." *United States v. Hough*, 944 F. Supp. 20, 22 (D.D.C. 1996). Defendants suggests that after facts are derived from the suppression hearing, including the lack of veracity of the investigating officers, this Court will find that the Government fails to meet its burden and that all evidence derived and statements taken subsequent to the illegal stop and warrantless search should be suppressed.

**II.    THE DEFENDANTS STATEMENTS SHOULD BE SUPPRESSED AS THEY WERE OBTAINED IN VIOLATION OF *MIRANDA* AND WERE INVOLUNTARILY COERCED**

**A.    The Supposed First Non-Verbal Gesture to Defendant's Pocket**

While the Government asserts that this 'gesture' was an admission on the part of the Defendant as to the question of whether there was marijuana in the car, Defendant asserts that facts adduced during the suppression hearing will demonstrate that no such gesture was given in response to the police questioning. Therefore, the ostensible gesture does not constitute an admission and the Government cannot rely upon it to establish probable cause for the arrest of the Defendant and the search of his vehicle.

**B.      The Statements Made Subsequent to the Defendant Being Arrested And Prior to *Miranda* Warnings Must Be Suppressed**

Taking the Government's facts on their face in its pleading, it is clear that Defendant was not read his *Miranda* rights and was in custodial interrogation when his statements were made, necessitating suppression of the statements.

First, the Government "concedes that defendant's statements to Sergeant Monahan on the scene while sitting in the police car post-arrest were not made pursuant to *Miranda*." Government's Response at 11. Further, the Government admits that "Defendant was placed under arrest" immediately after the officers found the small bag of marijuana on his person. Government's Response at 3. The Government continues that "they placed defendant in the front seat of a police cruiser [and] Sergeant Monahan sat next to him." Government's Response at 4. Monahan, without prompting from the Defendant, then questioned the Defendant, "so what are you, a drug dealer[?]" Government's Response at 4. Defendant then responded, "I'm a record producer" to which Monahan further questioned, "what is that, code for being a drug dealer?" Government's Response at 4. Defendant supposedly stated "yeah." Government's Response at 4.

"Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation omitted). "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id*. at 302.

Thus, based on the Government's own statement of the facts, Defendant was under formal arrest when placed in the police cruiser. Moreover, even if not under formal arrest, the placement of Defendant in the police cruiser in handcuffs was obviously a restraint on his freedom. Therefore, Defendant was clearly in custody for *Miranda* purposes.

Moreover, there was no 'spontaneous utterance,' but rather Sergeant Monahan began questioning the Defendant while sitting with him in the police cruiser. While Defendant was handcuffed and sitting in the police cruiser, Monahan directly asked the Defendant whether Defendant was a drug dealer. This is express questioning. Further, the answer to such a line of questioning is the underlying question to be determined by this criminal action. It is a query that any police officer would realize was reasonably likely to elicit an incriminating response. Such questioning obviously constitutes 'interrogation' under *Miranda*. Therefore, because Defendant was not read his *Miranda* rights and was under formal arrest, subject to express questioning by the police, the Defendant's statements must be suppressed as a violation of *Miranda*.

3

**C.    The Statements Made Subsequent to *Miranda* Warnings Should be Suppressed**

      **1.    The Statements Obtained at the Police Station Should Be Suppressed Because They Were Derived from the Prior Coerced and Involuntary Statements made in the Police Cruiser**

The Defendant avers that the Government bears the burden of proof that the statements made by the Defendant were voluntary. Defendant suggests that the hearing will demonstrate that the Government has failed to meet its burden. Defendant asserts that the initial statements that were obtained in violation of Defendant's *Miranda* rights were coerced in violation of the Fifth Amendment, and therefore this Court should exclude the subsequent statements which were derived from the initial unconstitutionally coerced statements. *See Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985).

Further, even if this Court finds that the initial statements were in violation of *Miranda* but were voluntary, Defendant suggests that the subsequent statements were involuntary despite the *Miranda* warning. Defendant suggests that the officer purposefully delayed giving the *Miranda* warnings until after Defendant Walters had already confessed so that the *Miranda* warning's protection against self-incrimination was effectively vitiated for Defendant Walters. *See Missouri v. Seibert*, 542 U.S. 600, 609-11 (2004).

The Supreme Court has held that:

> when a confession so obtained is offered and challenged, attention must be paid to the conflicting objects of *Miranda* and question-first [interrogation]. *Miranda* addressed interrogation practices... likely... to disable [an individual] from making a free and rational choice about speaking, and held that a suspect must be adequately and effectively advised of the choice the Constitution guarantees. The object of question-first is to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed.

*Id*. at 611. "[I]f the interrogators employ the technique of withholding warnings until after

4

interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation....  The... manifest purpose [of question-first] is to get a confession the suspect would not make if he understood his rights at the outset; the sensible underlying assumption is that with one confession in hand before the warning, the interrogator can count on getting its duplicate, with trifling additional trouble." *Id*. at 613.

This case is similar to *Seibert* in that the facts will "reveal a police strategy to undermine the *Miranda* warnings." *See id*. at 616.  Rather than reading Defendant his *Miranda* rights after being arrested, handcuffed and placed in the police cruiser, the officers waited to comply with the law until after they could first interrogate him in the police cruiser and obtain a confession.  Only after the confession was obtained, did the officers then read him his *Miranda* rights, at which point, Defendant Walters waived such rights and gave a videotaped confession similar to the confession given prior to the *Miranda* warnings.  Essentially, the officers sacrificed the first admission in order to obtain a subsequent admission after the *Miranda* warnings were properly administered.  Such gamesmanship to circumvent *Miranda's* protections should not be tolerated by the courts.  In such a situation, the Government cannot prove, and this Court cannot find that Defendant gave the subsequent post-*Miranda* statement voluntarily.

2.      **The Defendant's Statements Were Obtained Subsequent to Arrest and Prior to Being Brought Before a Magistrate In Violation of the Prompt Presentment Rule**

Furthermore, Defendant states that the statements made after arrest while being held at the police station should be suppressed as a violation of the prompt presentment rule.  Rule 5 of the Federal Rules of Criminal Procedure commands that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or

before a state or local judicial officer as Rule 5[c] provides...." Fed. R. Crim. Pro. 5(a)(1)(A).

       The Supreme Court explained the rationale behind this rule:

> The scheme for initiating a federal prosecution is plainly defined. The police may not arrest upon mere suspicion but only on 'probable cause.' The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible so that the may be advised of his rights and so that the issue of probable cause may be promptly determined. The arrested person may, of course, be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt.

*Mallory v. United States*, 354 U.S. 449, 454 (1957). Any pre-arraignment "delay must not be of a nature to give opportunity for the extraction of a confession." *Id*. at 455.

       In this case, rather than promptly presenting Defendant Walters to be arraigned and for a probable cause determination of his arrest, the arresting officers delayed presentment in order to obtain a videotaped statement of the Defendant. The only reason for the delay was so that the officers could elicit damaging and incriminating statements from Defendant Walters prior to a neutral judicial officer informing Defendant of his constitutional rights and before Defendant's Sixth Amendment right to counsel attached after his arraignment. The pre-arraignment interrogation in this case was not designed to elicit more information from the Defendant to satisfy legitimate investigatory roles. Rather, the interrogation performed during the pre-arraignment delay was used by the officers to coerce the Defendant into waiving his *Miranda* rights by using the former confession to disable the Defendant from making a free and rational choice and to coerce the Defendant into giving the exact same confession from a previous interrogation performed in violation of *Miranda*.

       Moreover, a waiver of Defendant's *Miranda* rights in this context should not be

6

controlling as to whether there was undue delay before presentment to the magistrate.[1]  The right

to counsel afforded by *Miranda* under the Fifth Amendment is different than the right to counsel

afforded by the Sixth Amendment subsequent to the onset of a criminal prosecution.  The

Supreme Court has held that:

> The Sixth Amendment right to counsel is triggered 'at or after the time that judicial
> proceedings have been initiated... whether by way of formal charge, preliminary hearing,
> indictment, information, or arraignment.  We have held that an accused is denied the
> basic protections of the Sixth Amendment when there is used against him at his trial
> evidence of his own incriminating words, which federal agents... deliberately elicited
> from him after he had been indicted and in the absence of his counsel.

*Fellers v. United States*, 540 U.S. 519, 523 (2004).  Further, "[t]he manifest purpose of 5(a) is to

make sure that an accused person is fully advised of all of his constitutional rights by a judicial

officer- not an enforcement officer- before he makes any incriminating statement."  *Coyote v.*

*United States*, 380 F.2d 305, 308 (10th Cir. 1967) (citing *Mallory*, 354 U.S. 449).  Therefore, the

Defendant waiving his right to counsel after being informed of his *Miranda* rights by an

adversarial officer is a sufficiently different than a defendant waiving his right to counsel after

the onset of criminal prosecution after being informed of his constitutional rights by a neutral and

detached judicial officer.

---

[1] In an older case, the D.C. Circuit found that a defendant waived his *Mallory* rights by waiving his *Miranda* rights.  *Pettyjohn v. United States*, 419 F.2d 651 (D.C. Cir. 1969).  Such a decision, however does not survive scrutiny.  If a waiver of *Miranda* automatically meant a waiver of *Mallory*, Rule 5(a) of the Federal Rules of Criminal Procedure would lose all efficacy.  Police would have an incentive to coerce an arrestee to waive *Miranda* rights and then would have a free opportunity to interrogate the arrestee indefinitely, until they coerced the answers they were looking for.  Such a result is ridiculous and is precisely the outcome that *Mallory* and Rule 5(a) are formulated to prevent by ensuring that a detached, neutral magistrate inform an arrestee of his constitutional rights.

Moreover, to find that the waiver of *Miranda* also waives *Mallory* ignores the aforementioned gamesmanship in which the police officers in this case and many other cases engage, by first violating the dictates of *Miranda* in order to subsequently remove the taint by using the first illegal admission to coerce a defendant to waive his *Miranda* rights in a second round of interrogation.  The protections of *Mallory* and Rule 5(a) protect against such abuses by mandating that a Defendant be informed of his constitutional rights by a neutral officer, rather than a cunning adversary.

Where the delay in bringing Defendant before the magistrate was to extract incriminating statements from the Defendant prior to the Defendant being fully informed of his constitutional rights that attach with the onset of criminal proceedings, the Defendant's extracted statements should be suppressed.

### 3. The Government Cannot Succeed In Carrying Its Heavy Burden that Defendant's *Miranda* Rights Were Voluntary Waived

Inasmuch as this Court finds that *Mallory* is not directly applicable because of the *Miranda* waiver, Defendant suggests that to vindicate the constitutional interest underlying *Mallory*, the Government bears a heavy and exacting burden in demonstrating that the waiver of *Miranda* rights was voluntary. "[A]ny confession [a defendant] makes while in exclusive police custody prior to arraignment is presumptively inadmissible under the Fifth and Sixth Amendments. Such confessions can stand if, but only if, the accused affirmatively and understandingly waives his rights, and the Government bears 'a heavy burden' in attempting to show such a waiver." *Frazier v. United States*, 419 F.2d 1161, 1166 (D.C. Cir. 1969). The *Frazier* court continued that its opinion "by no means... say[s] that unjustified delay in compliance with Rule 5(a) has no bearing on the admissibility of a confession forthcoming during a period of such delay." *Id*. at 1167. "[T]he greater the tardiness in presentment prior to a confession, the heavier the Government's already 'heavy burden' of showing effective waiver." *Id*. "A police warning, to be effective, must be given with proper solicitude for actual understanding" and "a waiver made in the coercive atmosphere of police custody is less likely to be voluntary than one made before a commissioner." *Id*. at 1167n.24.

Defendant suggests that the pre-arraignment delay combined with the coercive conditions

of police custody and the taint of the previous admission extracted in violation of *Miranda* will prevent the Government from meeting its heavy burden at the suppression hearing in demonstrating the voluntariness of the waiver.

### III. THE FRUITS OF THE NOVEMBER 19, 2007 SEARCH SHOULD BE SUPPRESSED BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH DID NOT CONSTITUTE PROBABLE CAUSE IN LIGHT OF THE INCLUDED FALSE STATEMENTS AND MATERIAL OMISSIONS

The Government writes that the only thing omitted from the search warrant affidavit by Detective Keness was the "defendant's bald assertion upon arrest that he lived in Clinton, Maryland." Government's Response at 14. Such a statement is patently ridiculous. Defendant will easily prove at the hearing that he actually does reside in Clinton, Maryland. Furthermore, the investigating officers had ample proof, beyond the Defendant's supposed "self-serving statement" that Defendant actually resided in Clinton, Maryland. Government's Response at 12. In the police report, it indicates that Defendant's car was "bearing Maryland tags 7DN A03." *See* Police Report. Surely the officers took the "investigative pains" to discover that his car was registered to the Clinton, Maryland address. Further, the Government's argument assumes that the officers were willfully blind to the address listed on Defendant's license, his Clinton, Maryland residence. Perhaps the officers also failed to notice that his phone number had a 301 area code for Maryland. *See* Police Report. Moreover, the officer must have ignored the address that was on file for Defendant Walters when they ran his social security number through the NCIC check. Essentially, it is beyond peradventure that the officers knew that Terrence Walters resided at 5011 Plata Street, Clinton, Maryland 20735. Therefore, this material information was either knowingly omitted from the search warrant affidavit or Detective Keness recklessly

disregarded such material information.

Further, the Government makes the Defendant's point for him when it writes that "Detective Keness in his affidavit never claimed that the Martin Luther King Avenue apartment was defendant's sole residence. In fact, what he told the reviewing magistrate was that 'based on the information and facts recited in the paragraphs above, your affiant believes that Terrence Stevan Walters is utilizing [the Martin Luther King address] to store documents relating to his criminal enterprise.'" Government's Response at 14. What the Government fails to address, is *why* Detective Keness believed that Defendant Walters would have documents or contraband at the Martin Luther King address. The affiant only offers one reason for such a belief:

> Based on your affiant's training experience and participating in narcotic-related investigations, your affiant has personal knowledge that individuals that traffick [sic] in narcotics, maintain books, records, receipts, notes, ledgers, safe deposit keys along with other papers and documents relating to transportation, ordering, purchase and distribution of controlled substances... in their residence.

Affidavit at ¶ 4. Such a factual basis would only support probable cause *if* the Martin Luther King Avenue address was Defendant's sole address. Otherwise, in the case where the Martin Luther King Avenue address was not used by the Defendant as a residence, the Affidavit would have to contain some information concerning places, other than residences, that drug traffickers use to store evidence of their drug trade. Further, in the case where the Defendant maintained two residences, to support probable cause the Affidavit would have to contain information why one residence, and not the other, was likely to contain evidence of drug trafficking. This Affidavit does neither, and as such does not support a finding of probable cause.

In its Response, the Government attempts to bootstrap evidence to demonstrate that the Affidavit supported a finding of probable cause. In so doing, the Government fails to heed the

rule that probable cause must only be determined by information on the face of the affidavit by "the circumstances set forth in the affidavit before" the magistrate. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992).

The Government asserts that Defendant "had the keys to [the Martin Luther King] apartment building on his person." Government's Response at 14. However, the Government fails to explain how the officers knew that the keys opened the door to the Martin Luther King address *prior* to the issuance of the search warrant. Either the officers made an invalid warrantless intrusion prior to the issuance of the search warrant or such information is merely an attempt to bootstrap probable cause.

Further, the Government writes that "when the lease was ultimately obtained, it had defendant's name on it too." Again, this is a clear case of bootstrapping. The lease was never mentioned in the Affidavit. Thus, the Defendant's lease cannot provide probable cause as determined by the facts recited in the Affidavit. *See Gates*, 462 U.S. at 238.

Finally, the Government states that "when defendant was arrested, he was stopped approximately ten blocks from the Martin Luther King address, not the Clinton, Maryland address." Government's Response at 14. Defendant agrees that such a statement is true. However, this fact is not included anywhere in the Affidavit. The Affidavit never mentions the Clinton, Maryland address. Therefore, even if true, such a statement cannot support probable cause as determined on the face of the Affidavit. *DeLeon*, 979 F.2d at 764.

Where a "warrant's validity is challenged for deliberate or reckless omissions of facts that tend to mislead, the affidavit must be considered with the omitted information included." *DeLeon*, 979 F.2d at 764 (citations omitted). When the material information of the Clinton,

11

Maryland address is inserted into the Affidavit, the Affidavit on its face does not support probable cause for finding that incriminating evidence would be found at the Martin Luther King Avenue address rather than the Clinton, Maryland address. *See United States v. Carpenter*, 360 F.3d 591,594 (6th Cir. 2004). Rather, based upon a "commons sense reading" of the information contained in the Affidavit, if Defendant's Clinton, Maryland residence was included in the Affidavit, probable cause would likely exist for a search of the Clinton, Maryland residence but not the Martin Luther King Avenue address.

The only nexus supplied between the contraband found in the Defendant's vehicle and the place to be searched is the generic statement that evidence of drug trafficking is usually found at a drug dealer's residence. When the place sought to be searched is not the person's residence or where the person has two residences, such boiler-plate language cannot support a finding of probable cause.[2] *See United States v. Richardson*, 861 F.2d 291, 294-95 (D.C. Cir. 1988). Thus, Defendant states that the fruits of the November 19, 2007 search, which was based on a materially false affidavit, must be suppressed pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Further, Defendant suggests that at least he is entitled to a hearing pursuant to *Franks*.

WHEREFORE Defendant Walters respectfully requests that based on his pleadings and evidence to be developed at the suppression hearing that this Honorable Court suppress the tangible evidence and statements that were illegally obtained.

---

[2] Courts have always held that evidence supporting probable cause in an affidavit must be particularized and not generalized. In this case, the statements included in the Affidavit were generalized, generic statements, that were not particularized to Defendant Walters. The only statement supporting probable cause was that all drug dealers keep evidence of their trafficking at their residence. The Affidavit fails to particularize why there is probable cause the Defendant Walters kept evidence of trafficking at his residence. *See United States v. Larkin*, 173 F.3d 857 (6th Cir. 1999) (citing *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996)) ("Affidavits supporting a search warrant must provide 'adequate supporting facts,' not mere conclusions or boilerplate language.").

12

Respectfully Submitted,

TERRENCE WALTERS
By Counsel

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
108 North Alfred Street
Suite 100 - Lower Level
Alexandria, Virginia, 22314
Phone: (703) 684-9400
Fax: (703) 684-9401
Email: wbmoffitt_esq@yahoo.com

## CERTIFICATE OF SERVICE

I, William B. Moffitt, hereby certify that I filed this Reply to Government's Opposition to Motion to Suppress on the 31st day of March, 2008, with the Clerk for the District Court of the District of Columbia using the ECF filing system, which will electronically serve the following individual:

David P. Saybolt
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
108 North Alfred Street
Suite 100 - Lower Level
Alexandria, Virginia, 22314
Phone: (703) 684-9400
Fax: (703) 684-9401
Email: wbmoffitt_esq@yahoo.com